GRADSTEIN & MARZANO, P.C.
HENRY GRADSTEIN (State Bar No. 89747)
hgradstein@gradstein.com
MARYANN R. MARZANO (State Bar No. 96867)
mmarzano@gradstein.com
HARVEY W. GELLER (State Bar No. 123107)
hgeller@gradstein.com
DANIEL B. LIFSCHITZ (State Bar No. 285068)
dlifschitz@gradstein.com
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
Telephone:  323-776-3100

EVAN S. COHEN (State Bar No. 119601)
esc@manifesto.com
1180 South Beverly Drive, Suite 510
Los Angeles, California 90035
Telephone:  310-556-9800  Facsimile:  310-556-9801

Attorneys for Plaintiff
FLO & EDDIE, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated.<br><br>Plaintiff,<br><br>v.<br><br>PANDORA MEDIA, INC, a Delaware corporation; and DOES 1 through 100,<br><br>Defendants. | Case No.  2:14-CV-07648-PSG (RZx)<br><br>**PLAINTIFF FLO & EDDIE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PANDORA MEDIA, INC.'S SPECIAL MOTION TO STRIKE**<br><br>Date:   February 23, 2015<br>Time:   1:30 p.m.<br>Place:  Courtroom 880<br>          Honorable Philip S. Gutierrez |

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................... 1

II.    STATEMENT OF FACTS ....................................................................... 3

III.   PANDORA'S CONDUCT DOES NOT QUALIFY FOR ANTI-SLAPP PROTECTION ......................................................................................... 4

     A.    Pandora's Conduct is Not Protected By the First Amendment .......... 5

     B.    Flo & Eddie Will Prevail On Its Claims. ........................................... 8

         1.    Civil Code §983(a) Was Repealed .......................................... 9

         2.    Civil Code § 983(a) Applied To Compositions, Not Recordings. ............................................................................. 12

         3.    The Sale of Records Has Never Constituted a General Publication of the Sounds. .................................................... 17

IV.   CALIFORNIA STATUTORY AND COMMON LAW PROTECTS OWNERS OF PRE-1972 RECORDINGS FROM ALL UNAUTHORIZED USES ............................................................................ 23

V.    PANDORA IS LIABLE FOR MISAPPROPRIATION, UNFAIR COMPETITION, AND CONVERSION WHETHER OR NOT IT VIOLATED §980(a)(2) ............................................................................ 23

VI.   CONCLUSION ..................................................................................... 25

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

i

## **TABLE OF AUTHORITIES**

### Cases

*A&M Records v. Napster, Inc.,*
239 F.3d 1004 (9th Cir. 2001)..................................................................5

*A&M Records, Inc.* v. *Heilman,*
75 Cal. App. 3d 554 (1977)...........................................................passim

*ABKCO Music, Inc. v. LaVere,*
217 F.3d 684 (9th Cir. 2000).............................................13, 14, 15, 21

*Allen Archery, Inc. v. Jennings Compound Bow, Inc.,*
686 F.2d 780 (9th Cir. 1982)..............................................................2, 11

*Balboa Ins. Co. v. Trans Global Equities,*
218 Cal. App. 3d 1327 (1990)..............................................................24

*Barcellos and Wolfsen v. Westlands Water Dist.,*
899 F.2d 814 (9th Cir. 1990)...................................................................9

*Batzel v. Smith,*
333 F.3d 1018 (9th Cir. 2003)................................................................5

*Beverly Hilton Hotel v. Workers' Comp. Appeals Bd.,*
176 Cal. App. 4th 1597 (2009)..............................................................10

*Blanc v. Lantz,*
1949 WL 4766 (Cal. Superior Ct. 1949).........................................20, 21

*Bobbs-Merrill Co.,*
210 U.S. 339 (1908) ..............................................................................14

*Cable/Home Communication Corp. v. Network Productions, Inc.,*
902 F.2d 829 (11th Cir. 1990)................................................................5

*Callet v. Alioto,*
210 Cal. 65 (1930)................................................................................10

*Capitol Records, Inc.* v. *Erickson,*
2 Cal. App. 3d 526 (1969)..............................................................passim

*Capitol Records, Inc. v. Mercury Records Corp.,*
221 F.2d 657 (2d Cir. 1955)..................................................................19

*Capitol Records, Inc. v. Naxos of Am., Inc.,*
4 N.Y.3d 540 (2005)........................................................................passim

*Capitol Records, LLC v. Bluebeat, Inc.,*
765 F. Supp. 2d 1198 (C.D. Cal. 2010)..........................................passim

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

*Capitol Records, LLC v. Sirius XM*,
  Superior Court of the State of California, County of Los Angeles,
  Case No. BC520981 (August 27, 2014) (Dkt. 132-1) ...................................6

*CBS Inc. v. Garrod*,
  622 F. Supp. 532 (D.C. Fla. 1985) ...................................20

*Chiatello v. City and County of San Francisco*,
  189 Cal. App. 4th 472 (Cal. App. 1st Dist. 2010).........................11-12

*Cinevision Corp. v. Burbank*,
  745 F.2d 560 (9th Cir. 1984)...................................7

*Columbia Pictures, Inc. v. Bunnell*,
  245 F.R.D. 443 (C.D. Cal. 2007) ...................................5

*Cross v. Cooper*,
  197 Cal. App. 4th 357 (Cal. App. 6th Dist. 2011) ...................................8

*Cusano v. Klein*,
  473 Fed. Appx. 803 (9th Cir. 2012) ...................................7

*Daghlian v. DeVry Univ., Inc.*,
  574 F.3d 1212 (9th Cir. 2009)...................................10

*Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*,
  600 F.2d 1184 (5th Cir. 1979) ...................................6

*DiCampli-Mintz v. County of Santa Clara*,
  55 Cal. 4th 983 (2012)...................................23

*Dickman v. Comm'r*,
  465 U.S. 330 (1984) ...................................24

*Duncan v. Cohen*,
  2008 U.S. Dist. LEXIS 109342 (N.D. Cal. July 22, 2008)...................................7

*Dyna-Med, Inc. v. Fair Emp't & Hous. Com.*,
  43 Cal. 3d 1379 (1987) ...................................13

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003) ...................................9, 14, 16

*Federal Election Com. v. International Funding Inst., Inc.*,
  969 F.2d 1110 (D.C. Cir. 1992) ...................................8

*Flo & Eddie Inc. v. Sirius XM Radio Inc.*,
  2014 U.S. Dist. LEXIS 139053 (C.D. Cal. Sept. 22, 2014).........................5, 6

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  2014 U.S. Dist. LEXIS 174907 (S.D.N.Y. Dec. 12, 2014)...................................19

*Golan v. Holder*,
  132 S. Ct. 873 (2012) ...................................11

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

iii

*Goldstein v. Cal.,*
   412 U.S. 546 (1973) ..................................................................................passim

*Gotham Ins. Co. v. Shasta Techs., LLC,*
   2014 U.S. Dist. LEXIS 47007 (N.D. Cal. Apr. 3, 2014) ..................................5

*Governing Board v. Mann,*
   18 Cal.3d 819 (1977)......................................................................................10

*Graham-Sult v. Clainos,*
   738 F.3d 1131 (9th Cir. 2013) .........................................................................7

*Guardianship of Casad,*
   106 Cal. App. 2d 134 (Cal. App. 1951) .......................................................2, 12

*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures,*
   184 Cal. App. 4th 1539 (Cal. App. 1st Dist. 2010)..........................................6

*Harper & Row Publishers, Inc. v. Nation Enterprises,*
   471 U.S. 539 (1985) .........................................................................................5

*Hecimovich v. Encinal School Parent Teacher Organization,*
   203 Cal. App. 4th 450 (2012) ...........................................................................7

*Hollywood Screentest Of America, Inc. v. NBC Universal, Inc.,*
   151 Cal. App. 4th 631 (2007)..........................................................................24

*In re Gonzalez,*
   456 B.R. 429 (Bankr. C.D. Cal. 2011) ...........................................................11

*International News Service v. Associated Press,*
   248 U.S. 215 (1918) .......................................................................................23

*James W. Newton v. Diamond,*
   204 F. Supp. 2d 1244 (C.D. Cal. 2002)...........................................................12

*Kramer v. Thomas,*
   2006 U.S. Dist. LEXIS 96714 (C.D. Cal. Sept. 28, 2006)..............................25

*Krause v. Rarity,*
   210 Cal. 644 (1930) ........................................................................................10

*La Cienega Music Co. v ZZ Top,*
   53 F.3d 950 (9th Cir 1995)..............................................................................21

*Lane v. Whitaker,*
   50 Cal. App. 2d 327 (1942) ............................................................................24

*Lone Ranger Television, Inc. v. Program Radio Corp.,*
   740 F.2d 718 (9th Cir. 1984).....................................................................passim

*McBarron v. Kimball,*
   210 Cal. App. 2d 218 (Cal. App. 1st Dist. 1962)............................................11

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

*McIntyre v. Double-A Music Corp.,*
    166 F. Supp. 681 (S.D. Cal. 1958) ...................................................................20

*Mello v. Great Seneca Fin. Corp.,*
    526 F. Supp. 2d 1024 (C.D. Cal. 2007)..............................................................5

*Mendly v. County of Los Angeles,*
    23 Cal. App. 4th 1193 (Cal. App. 2d Dist. 1994) ..............................................9

*Metro One Telcoms., Inc. v. Comm'r,*
    704 F.3d 1057 (9th Cir. 2012)...........................................................................13

*Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.,*
    199 Misc. 786, 101 N.Y.S.2d 483 (Sup. Ct. 1950) ..........................................19

*Mindys Cosmetics, Inc. v. Dakar,*
    611 F.3d 590 (9th Cir. 2010).............................................................................5

*Napa State Hospital v. Flaherty,*
    134 Cal. 315 (1901).....................................................................................1, 10

*No Doubt v. Activision Publishing, Inc.,*
    192 Cal. App. 4th 1018 (2011)...........................................................................7

*Palmer v. Stassinos,*
    419 F. Supp. 2d 1151 (N.D. Cal. 2005) ...........................................................10

*Paul v. Friedman,*
    95 Cal. App. 4th 853 (Cal. App. 2d Dist. 2002) ...............................................7

*People v. Kwak,*
    63 Cal. App. 4th 1236 (1998)...........................................................................24

*Physicians Com. for Responsible Medicine v. Tyson Foods, Inc.,*
    119 Cal.App.4th 120 (2004).............................................................................12

*Ray Charles Found. v. Robinson,*
    919 F. Supp. 2d 1054 (C.D. Cal. 2013)..............................................................7

*RCA Mfg. Co. v. Whiteman,*
    114 F.2d 86 (2d Cir. 1940).........................................................................19, 20

*Reagan v. Sausalito,*
    210 Cal. App. 2d 618 (1962).............................................................................10

*Richlin v. MGM Pictures, Inc.,*
    531 F.3d 962 (9th Cir. Cal. 2008) .....................................................................9

*Schad v. Mt. Ephraim,*
    452 U.S. 61 (1981) .............................................................................................7

*Smith v. Fair Emp't & Hous. Com,*
    12 Cal. 4th 1143 (1996)....................................................................................13

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

*Southern Service Co., v. County of Los Angeles*,
  15 Cal.2d 1 (1940) .................................................................. 10

*Stanley v. Columbia Broadcasting System, Inc.*,
  35 Cal. 2d 653 (1950) ........................................................ 15, 22

*Stewart v. Rolling Stone LLC*,
  181 Cal. App. 4th 664 (2010) .................................................... 7

*Tilden Lumber Co. v. Perino*,
  2 Cal. App. 2d 133 (Cal. App. 1934) ........................................ 12

*UMG Recordings v. MP3.com, Inc.*,
  92 F. Supp. 2d 349 (S.D.N.Y. 2000) ......................................... 25

*United States v. Bodin*,
  375 F. Supp. 1265 (W.D. Okla. 1974) ........................................ 6

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ................................................................. 7

*Waring v. WDAS Broadcasting Station, Inc.*,
  327 Pa. 433 (1937) ................................................................ 20

*White-Smith Music Publishing Co. v. Apollo Co.*,
  209 U.S. 1 (1908) .................................................................. 13

*Younger v. Superior Court*,
  21 Cal.3d 102 (1978) ............................................................. 10

*Zacchini v. Scripps-Howard Broad. Co.*,
  433 U.S. 562 (1977) ................................................................ 7

## Statutes

17 U.S.C. § 107 ........................................................................ 25

17 U.S.C. § 109 ........................................................................ 23

17 U.S.C. § 301(c) ............................................................... 23, 25

17 U.S.C. § 303(b) .................................................................... 21

Cal. Bus. & Prof. Code § 17200 .................................................... 4

Cal. Civ. Code § 654 ................................................................ 24

Cal. Civ. Code § 980 .......................................................... passim

Cal. Civ. Code § 980(a)(2) .................................................. passim

Cal. Civ. Code § 983(a) ...................................................... passim

Cal. Civ. Code § 3530 ............................................................... 10

Cal. Code of Civ. Proc. § 425.16 .................................................. 4

Cal. Code of Civ. Proc.§ 425.17(d)(2) ....................................................... 8

Cal. Gov. Code § 9606 ............................................................................. 10

<u>Other</u>

Brief of Amicus Curiae American Intellectual Property Law Association In Support of Respondents at 7, *Golan v. Holder*, No. 10-545 (U.S. 2012), *available at* http://www.americanbar.org/content/dam/aba/publishing/previewbriefs/Other _Brief_Updates/10-545_respondentamcuaipla.authcheckdam.pdf. ................ 8

Code Commissioner's Note of 1874 ......................................................... 15

Leg. Assemb. B. 566, 57th Gen. Sess. (Cal. 1947) ("1947 Leg. Hist.") (Patent, Trademark and Copyright Section of the State Bar of California Report and Recommendation For…Repeal…of Civil Code Section 983(a)) ................... 15

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

# I.     **INTRODUCTION.**

Based on a repealed statute, a case that relied on the repealed statute, an overruled case, and a First Amendment argument that equates piracy with free speech, Pandora Media, Inc. ("Pandora") seeks dismissal of Flo & Eddie, Inc.'s ("Flo & Eddie") complaint under California's anti-SLAPP statute. Pandora's motion is an abuse of the anti-SLAPP process and is nothing more than a transparent attempt to seek the same immediate appeal to the Ninth Circuit that this Court previously denied to Sirius XM Radio, Inc. ("Sirius XM").

Pandora's motion is based entirely on the erroneous belief that *former* Cal. Civ. Code § 983(a) operated to place into the public domain all pre-1972 recordings that were "published" (*i.e.*, according to Pandora, sold to the public as records during the life of the statute). Section 983(a) said no such thing. By its plain language, that section did not apply to recordings and was never anything more than a limitation of liability. But more importantly, because § 983(a) was repealed in its entirety in 1982, ***by law and for purposes of this action, it must be treated as though it never existed***. As the California Supreme Court made clear in *Napa State Hospital v. Flaherty*, 134 Cal. 315, 317-318 (1901):

> "[T]he effect of repealing a statute is to obliterate it as completely from the records…as if it had never passed; and it must be considered as a law that never existed, except for the purpose of those actions which were commenced, prosecuted, and concluded whilst it was an existing law."

*Napa State Hospital* has been the law in California for over 100 years, yet its holding (which can be found in any number of California cases) is nowhere to be found in Pandora's brief. Instead, Pandora provides the Court with an irrelevant and misleading history lesson in copyright jurisprudence that pretends that § 983(a) still exists simply because it was cited in *Lone Ranger Television, Inc. v. Program Radio*

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1   *Corp.*, 740 F.2d 718 (9th Cir. 1984).  It is there that Pandora ignores another

2   longstanding rule; namely, that decisions founded on a statute which no longer

3   exists have no authoritative force.  *Allen Archery, Inc. v. Jennings Compound Bow,*

4   *Inc.*, 686 F.2d 780 (9th Cir. 1982); *Guardianship of Casad*, 106 Cal. App. 2d 134,

5   141-142 (Cal. App. 1951).

6       While the repeal of § 983(a) disposes of all of Pandora's arguments, there are

7   two other reasons why Pandora's reliance on that statute is misplaced.  ***First***, §

8   983(a) never applied to recordings; it only applied to "composition[s] in letters or

9   art," which in the context of music meant the underlying musical compositions

10  embodied in recordings.  This conclusion is not only supported by the plain meaning

11  of "composition," but by the purpose of § 983(a), which was to draw a bright line

12  between when state copyright protection ended and federal copyright protection

13  began.  This line was critical to effectuate the hand-off from state to federal

14  protection for "compositions" (which were covered by federal law) but had nothing

15  to do with recordings which were not entitled to federal protection.  ***Second***,

16  because of their special nature, pre-1972 recordings were not "published" under the

17  law by their sale or broadcast.  As courts have routinely found, no one would have

18  sold recordings if the sale of single copy of the recording by its owner resulted in the

19  public thereafter being able to make all future sales.

20      Pandora's argument that the protection of pre-1972 recordings under Cal. Civ.

21  Code § 980(a)(2) amounts to a grant of "zombie copyright" purposely ignores the

22  limited scope and purpose of § 983(a) as well as its complete disappearance upon

23  repeal.  Pandora's motion should be understood for what it is: a free pass to the

24  Ninth Circuit.  But nothing in its motion changes the conclusion that, under

25  California law, Pandora does not have (and never had) a free pass to exploit pre-

26  1972 recordings without a license and without paying royalties.

27

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

## II.   STATEMENT OF FACTS.

As the Court is aware from the action against Sirius XM, Flo & Eddie is owned by Howard Kaylan and Mark Volman, two of the founding members of the enormously popular band The Turtles.  Flo & Eddie exclusively owns The Turtles' recordings, including the immensely popular hits "Happy Together," "It Ain't Me Babe," "You Baby," "She'd Rather Be With Me," "Elenore," and "You Showed Me."  Flo & Eddie has been and continues to be engaged in the business of distributing, selling, and/or licensing the reproduction, distribution, sale, and performance of The Turtles' Recordings including in records, audiovisual works, and for streaming (i.e., performing) and downloading over the Internet.  Flo & Eddie has not licensed The Turtles' recordings to Pandora.  **(Declaration of Mark Volman Decl. ["Volman Decl."] ¶¶ 1-8)**

Like Sirius XM, Pandora is one of the leading operators of an internet radio service in the United States, offering a personalized music experience for each of its 200 million registered users "wherever and whenever they want to listen to radio on a wide range of smart phones, tablets, traditional computers, car audio systems and a range of other internet-connected devices."  **(Answer ¶ 1; Declaration of Harvey Geller ["Geller Decl."] ¶ 2, Ex. A)**  Pandora provides this service to paying and non-paying members of the public in California and delivers and streams music through its website (www.pandora.com) and to smart phones and tablets through its downloadable Android and iOS Apps.  **(Answer ¶ 16)**

Although Pandora readily acknowledges that to "secure the rights to stream music content over the internet, [it] must obtain licenses from, and pay royalties to, copyright owners of both sound recordings and musical works," it nevertheless chose not to obtain licenses from owners of sound recordings of musical performances that initially were fixed (i.e., recorded) prior to February 15, 1972 ("pre-1972 recordings").  **(Answer ¶ 2; Geller Decl. ¶ 2, Ex. B)**  Consistent with not having licenses is that Pandora also does not pay royalties with respect to pre-

3

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1972 recordings, as its CEO admitted in a 2014 earnings call.  *See*
http://seekingalpha.com/article/2164393-pandora-medias-ceo-discusses-q1-2014-
results-earnings-call-transcript?page=2 ("To be clear, we paid publish (sic) royalties
on these spins.  But like other similarly situated companies including Terrestrial
Radio, we do not pay sound recording royalties.  Pre 1972 sound recordings
represent approximately 5% of total spins on Pandora.")  **(Geller Decl. ¶ 3, Ex. C)**
Despite not having licenses or paying royalties, Pandora offers and advertises
stations dedicated to pre-1972 recordings, such as "50s Rock 'n' Roll," "60s
Oldies," "Motown," "Doo-Wop," "70s Folk," "Early Jazz," "Standards," "Classic
Soul," "Jam Bands," and "Classic Rock."[1]  **(Geller Decl. ¶4, Ex. D)**

In light of Pandora's unlicensed use of pre-1972 recordings, on October 6,
2014, Flo & Eddie filed suit against it, alleging on behalf of itself and a class of
owners of pre-1972 recordings claims for violation of Cal. Civ. Code § 980(a)(2),
misappropriation, violation of Cal. Bus. & Prof. Code § 17200, and conversion.
**(Dkt. 1)**  Pandora answered the Complaint on December 5, 2014 **(Dkt. 17)** and in
large part dodged the factual allegations in the Complaint by claiming that they
contained "legal arguments and conclusions."  Before Flo & Eddie could challenge
the sufficiency of the Answer, Pandora filed the instant anti-SLAPP motion.

III.   **PANDORA'S CONDUCT DOES NOT QUALIFY FOR ANTI-SLAPP
       PROTECTION.**

California's anti-SLAPP statute – Code of Civ. Proc. § 425.16 – was intended
as a procedure to allow a court to strike a narrow class of lawsuits; namely, those

---

[1] Because Pandora filed its motion to strike before discovery could even commence,
Flo & Eddie has not had an opportunity to obtain Pandora's data or documents.
That discovery would disclose the full extent of Pandora's exploitation in California
of pre-1972 recordings, including The Turtles' recordings.  To the extent that
information is relevant to this motion, Flo & Eddie would request that the motion
not be ruled on until it receives that information.

based on a defendant's "lawful pursuit" of a right to free speech in connection with a public issue. *Gotham Ins. Co. v. Shasta Techs*., LLC, 2014 U.S. Dist. LEXIS 47007 *9 (N.D. Cal. Apr. 3, 2014). In other words, "lawsuits that 'masquerade as ordinary lawsuits'" but are really "brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Mello v. Great Seneca Fin. Corp*., 526 F. Supp. 2d 1024, 1027 (C.D. Cal. 2007) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1023-24 (9th Cir. 2003)).

This case does not qualify for protection under either of the two prongs of the anti-SLAPP analysis. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (discussing two prongs). With respect to the first prong, Pandora cannot show that Flo & Eddie's causes of action "arise[] from an act in furtherance of the defendant's rights of petition or free speech." And with respect to the second prong, this Court's summary judgment ruling in *Flo & Eddie Inc. v. Sirius XM Radio Inc.*, 2014 U.S. Dist. LEXIS 139053 (C.D. Cal. Sept. 22, 2014) establishes that Flo & will prevail on liability.

### A.   Pandora's Conduct is Not Protected By the First Amendment.

While there are many complex intersections between free speech and intellectual property, there is one black-and-white principle that Pandora cannot avoid: the First Amendment does not protect copyright infringement. *See Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 555-557 (1985) (rejecting First Amendment challenge to copyright infringement action); *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 451-452 (C.D. Cal. 2007) ("To the extent [Defendants] are engaged in copyright infringement, the First Amendment affords them no protection whatsoever."); *A&M Records v. Napster, Inc*., 239 F.3d 1004, 1028 (9th Cir. 2001) (holding that the First Amendment does not protect use of a peer-to-peer file sharing network that constitutes copyright infringement). In other words, "the First Amendment is not a license to trammel on legally recognized rights in intellectual property." *Cable/Home Communication Corp. v. Network*

5

*Productions, Inc.*, 902 F.2d 829, 849 (11th Cir. 1990) (quoting *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1188 (5th Cir. 1979)); *see also United States v. Bodin*, 375 F. Supp. 1265, 1267 (W.D. Okla. 1974) ("We fail to see as any protected first amendment right a privilege to usurp the benefits of the creative and artistic talent, technical skills, and investment necessary to produce a single long-playing record of a musical performance.")

Against this backdrop, Pandora's ineligibility for protection under the anti-SLAPP statute is clear.  The pre-1972 recordings owned by Flo & Eddie and the class are all protected from unlicensed exploitation of any kind under California law.  *See* Cal. Civ. Code § 980(a)(2); Cal. Pen. Code § 653h; *Flo & Eddie Inc. v. Sirius XM Radio Inc.*, 2014 U.S. Dist. LEXIS 139053 (C.D. Cal. Sept. 22, 2014); *Capitol Records, LLC v. Bluebeat, Inc.*, 765 F. Supp. 2d 1198 (C.D. Cal. 2010); *Capitol Records, Inc.* v. *Erickson*, 2 Cal. App. 3d 526 (1969); *A&M Records, Inc.* v. *Heilman,* 75 Cal. App. 3d 554, 564 (1977); *Goldstein v. Cal.*, 412 U.S. 546 (1973); *Lone Ranger*; Order Granting Motion For Jury Instruction, *Capitol Records, LLC v. Sirius XM*, Superior Court of the State of California, County of Los Angeles, Case No. BC520981 (August 27, 2014) (Dkt. 132-1).  Because Pandora's conduct does not constitute "protected activity," its First Amendment argument evaporates. *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures*, 184 Cal. App. 4th 1539, 1550 (Cal. App. 1st Dist. 2010) (cause of action that does not target protected activity and is not subject to the SLAPP statute).

Rather than addressing this fundamental shortcoming in its argument, Pandora instead takes the Court on a tour of basic First Amendment principles, focusing on noncontroversial propositions such as that "entertainment…enjoys First Amendment protection" or that SLAPP suits can be "based upon the…dissemination, exhibition…or other similar promotion of any…musical…or artistic work."  **(Motion 17:1-21, 18:5-11)**.  However, it does not follow from these generic propositions that any exploitation of entertainment by a broadcaster qualifies

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

as an exercise of free speech protected under § 425.16.  *Duncan v. Cohen*, 2008 U.S. Dist. LEXIS 109342, *7 (N.D. Cal. July 22, 2008) ("If this was true, every suit for copyright infringement or breach of contract involving [protected media] would be subject to California's anti-SLAPP statute.")

Significantly, Pandora has not cited a single case that construes copyright infringement (or even anything that looks like copyright infringement) to be "protected activity" pursuant to § 425.16.  But there are many cases that say otherwise.  *See Graham-Sult v. Clainos*, 738 F.3d 1131, 1143-1146 (9th Cir. 2013) (conversion of intellectual property "is not a protected activity"); *Duncan*, 2008 U.S. Dist. LEXIS 109342 at *6 ("This action centers on copyright and contract claims, not protected activity"); *Ray Charles Found. v. Robinson*, 919 F. Supp. 2d 1054, 1064 (C.D. Cal. 2013) (explaining that *Duncan* was "not based on the exercise of free speech rights, but on alleged copyright infringement…").

The only cases that Pandora does cite are inapposite, which causes Pandora to try and broaden their holdings by ignoring the actual culpable conduct of the defendants in each case.[2]  Pandora's broad brush approach to the first prong ignores that § 425.16 "does not apply in every case where the defendant may be able to raise a First Amendment defense to a cause of action.  Rather, it is limited to exposing and dismissing SLAPP suits – lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech…" *Paul v. Friedman*, 95 Cal. App.

---

[2] *See Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 578 (1977) (right of publicity); *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) (city ordinance); *Schad v. Mt. Ephraim*, 452 U.S. 61 (1981) (city ordinance); *Cinevision Corp. v. Burbank*, 745 F.2d 560 (9th Cir. 1984) (breach of contract); *Hecimovich v. Encinal School Parent Teacher Organization*, 203 Cal. App. 4th 450 (2012) (defamation); *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664 (2010) (right of publicity); *Cusano v. Klein*, 473 Fed. Appx. 803 (9th Cir. 2012) (right of publicity); *No Doubt v. Activision Publishing, Inc.*, 192 Cal. App. 4th 1018 (2011) (right of publicity).

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

7

4th 853, 864, fn. 20 (Cal. App. 2d Dist. 2002) (internal quotes and citations omitted). If a defendant's speech is not a *valid* furtherance of its First Amendment rights, it does not qualify for anti-SLAPP protection. *Cross v. Cooper*, 197 Cal. App. 4th 357, 383 (Cal. App. 6th Dist. 2011). And there is nothing "valid" about music piracy. *See Federal Election Com. v. International Funding Inst., Inc*., 969 F.2d 1110, 1120 (D.C. Cir. 1992) ("[Defendant] would have us extend the reach of the First Amendment beyond reason when it asks us to sanction what would otherwise be an act of piracy.").

Pandora is not, as it contends, a purveyor of free speech. **(Motion 16:21-18:15)** As Sirius XM's former counsel and Pandora's current counsel in other matters stated to the United States Supreme Court: "[t]he First Amendment is intended to protect the right to free speech, but it is not intended to make the copying of someone else's speech free."[3]

### B.    Flo & Eddie Will Prevail On Its Claims.

In order to try and show that Flo & Eddie will not prevail on its claims, Pandora makes the sweeping assertion that former Civil Code § 983(a) permanently stripped all pre-1972 recordings of protection under California law once they were published.[4] Pandora is wrong for at least the following reasons:

- § 983(a) was repealed and, by law, must be treated as if it never existed.
- § 983(a), by its own plain language, did not apply to sound recordings; it

---

[3] Brief of Amicus Curiae American Intellectual Property Law Association In Support of Respondents at 7, *Golan v. Holder*, No. 10-545 (U.S. 2012), *available at* http://www.americanbar.org/content/dam/aba/publishing/previewbriefs/Other_Brief_Updates/10-545_respondentamcuaipla.authcheckdam.pdf.

[4] Civil Code § 983(a)  provided: "If the owner of a composition in letters or art publishes it the same may be used in any manner by any person, without responsibility to the owner, insofar as the law of this State is concerned."

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1    only applied to "composition[s] in letters or art."

2    • Pre-1972 recordings were not "published" by their sale or broadcast.

3    Pandora's argument regarding § 983(a) not only fails as a matter of law, but

4    also as a matter of logic.  Indeed, under Pandora's theory, if previously sold pre-

5    1972 recordings entered the public domain as a result of § 983(a), that would mean

6    they lost protection from *all* (not just some) forms of unauthorized exploitation. This

7    would render inexplicable the rulings of *Goldstein*, *Erickson*, *Heilman*, *Bluebeat*,

8    and even *Lone Ranger* – all cases involving pre-1972 recordings that had been (by

9    Pandora's argument) published under § 983(a), yet liability (and, in *Goldstein*, a

10   criminal conviction) was still found.  Pandora's argument depends on a world where

11   none of these holdings exist.

12   ## 1.   Civil Code §983(a) Was Repealed.

13   During its existence, § 983(a) identified the point at which federal copyright

14   protection subsumed common law copyright protection for "compositions in letters

15   and art."  *Richlin v. MGM Pictures, Inc.*, 531 F.3d 962, 972 (9th Cir. Cal. 2008).

16   Consistent with the 1909 Copyright Act, that point was when the "compositions in

17   letters and art" were published (in the legal sense).  However, upon passage of the

18   1976 Copyright Act, which moved the point of federal protection from "publication"

19   to "fixation," § 983(a) ceased to have a purpose.  *Eldred v. Ashcroft*, 537 U.S. 186,

20   194-195 (2003).  Because § 983(a) no longer served any purpose, the California

21   legislature acted upon this change by repealing § 983(a) in its entirety.  *See Mendly*

22   *v. County of Los Angeles*, 23 Cal. App. 4th 1193, 1207 (Cal. App. 2d Dist. 1994)

23   ("A legislature may repeal a statute that created non-contractual expectations as long

24   as there is a rational basis for repeal.") (quoting *Barcellos and Wolfsen v. Westlands*

25   *Water Dist.*, 899 F.2d 814, 825 (9th Cir. 1990)).  The repeal of § 983(a) contained

26   no savings clause, and Pandora has cited to none.  In addition to repealing § 983(a),

27   the California legislature enacted § 980(a)(2) to provide statutory protection of pre-

28   1972 recordings.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

9

Upon its repeal, § 983(a) ceased to exist – and under California law must be treated as if it never existed. *Napa State Hospital*, *supra*, 134 Cal. at 317-318; *accord Reagan v. Sausalito*, 210 Cal. App. 2d 618, 623 (1962); *Beverly Hilton Hotel v. Workers' Comp. Appeals Bd.*, 176 Cal. App. 4th 1597, 1604 (2009); *see also Krause v. Rarity*, 210 Cal. 644, 653 (1930) ("a repeal of the statute conferring the right, prior to final judgment, would abolish the right and place the parties in the same position as if the statute never existed"); Cal. Civ. Code § 3530 ("That which does not appear to exist is to be regarded as if it did not exist."). Moreover, any remedial immunity that § 983(a) may have provided during its existence was also eliminated. *Callet v. Alioto*, 210 Cal. 65, 67–68 (1930) ("[A] cause of action or remedy dependent on a statute falls with a repeal of the statute...") (citations omitted); *see also Daghlian v. DeVry Univ., Inc.*, 574 F.3d 1212, 1213 (9th Cir. 2009) (repeal of a statute abated plaintiff's claims based thereupon); *Palmer v. Stassinos*, 419 F. Supp. 2d 1151, 1155-1156 (N.D. Cal. 2005) ("[A]bsent a savings clause, repeals of statutory enactments must apply retroactively to pending cases."); *accord Southern Service Co., v. County of Los Angeles*, 15 Cal.2d 1, 11–12 (1940); *Governing Board v. Mann*, 18 Cal.3d 819, 829 (1977); *Younger v. Superior Court*, 21 Cal.3d 102, 109 (1978).

Because Pandora did not even exist when § 983(a) was repealed, it certainly cannot complain about the effect of its repeal. In fact, Cal. Gov. Code § 9606 makes it very clear that absent vested rights, ***no one*** can complain about the repeal of a statute:

> Any statute may be repealed at any time, except when vested rights would be impaired. Persons acting under any statute act in contemplation of this power of repeal.

Not only did Pandora have no vested rights as a result of § 983(a), but neither did anyone else. As the United States Supreme Court emphatically held in *Golan v.*

1   *Holder*, 132 S. Ct. 873, 891-892 (2012), even if a work falls into the public domain,

2   the public does not gain any "vested rights" to that work.

3          In *Golan*, the reproducers of certain foreign works in the public domain

4   sought to have §514 of the Uruguay Round Agreements Act, which had granted new

5   copyright protection to the foreign works, declared unconstitutional.  The

6   reproducers made two arguments: (1) §514 exceeded the copyright authority of

7   Congress; and (2) granting copyrights to works which were previously reproduced

8   without limit had violated the reproducers' rights to free speech under the First

9   Amendment.  The Supreme Court rejected both arguments and held that the

10  reproducers had no "vested rights" in works in the public domain, as evidenced by

11  (among other things) Congress's routine practice of extending copyright protection

12  to works that were previously unprotected or in the public domain.  As the *Golan*

13  Court held, the public domain is not "inviolate."  *Golan*, 132 S. Ct. at 886.

14         As a matter of law, the same public that had no vested rights in *Golan* also

15  had no vested rights here.  Furthermore, Section 983(a) did not even purport to grant

16  the public vested rights; it merely operated as limitation on liability.  Thus, there can

17  be no dispute that it was perfectly appropriate for the California legislature to repeal

18  § 983(a) and to provide statutory protection for recordings through enactment of §

19  980(a)(2).  *See McBarron v. Kimball*, 210 Cal. App. 2d 218, 220-221 (Cal. App. 1st

20  Dist. 1962) ("where a statutory enactment does not impair the obligation of a

21  contract or interfere with vested rights...it may be applied retrospectively if

22  necessary to accomplish the purposes for which the statute was enacted.")

23         Not only did § 983(a) cease to exist when it was repealed, but its obliteration

24  negated any case law dependent on it, including *Lone Ranger*.  *See Allen Archery,*

25  686 F.2d at 783 (declining to apply cases that were based upon repealed statutes); *In*

26  *re Gonzalez*, 456 B.R. 429, 435, fn. 8 (Bankr. C.D. Cal. 2011) (disapproving of a

27  proposition derived from cases based on a repealed statute); *Chiatello v. City and*

28  *County of San Francisco*, 189 Cal. App. 4th 472, 488 (Cal. App. 1st Dist. 2010)

1   (declining to apply a case where it "relied on an immunity statute that has

2   subsequently been repealed."); *Guardianship of Casad*, 106 Cal. App. 2d at 141-142

3   (holding that a decision founded on a statute which no longer exists "has no

4   authoritative force."); *Tilden Lumber Co. v. Perino*, 2 Cal. App. 2d 133, 134 (Cal.

5   App. 1934) (describing a case that "was decided under a statute that has been

6   repealed" as "not helpful" to the court). ***Lone Ranger may be cited for many***

7   ***things, but the one thing that it cannot be cited for is that § 983(a) is – or ever was***

8   ***– good law***.   The only reason that § 983(a) was even discussed in *Lone Ranger* was

9   because the subsection was still "in effect at the time of the filing of this suit."  *Lone*

10  *Ranger*, 740 F.2d at 726.  Section 983(a) is not in effect now – § 980(a)(2) is, and

11  that is the statute that governs this case.  *Physicians Com. for Responsible Medicine*

12  *v. Tyson Foods, Inc.*, 119 Cal.App.4th 120, 125 (2004) (court "must dispose of the

13  case under the law in force when its decision is rendered").

### 2.   Civil Code § 983(a) Applied To Compositions, Not Recordings.

16      Even if former Civil Code § 983(a) had never been repealed, it would still be

17  of no use to Pandora, as it also never applied to sound recordings – only to

18  "composition[s] in letters or art," meaning the underlying musical compositions

19  embodied in sound recordings.  In its motion, Pandora explains, but does not

20  appreciate, the critical distinction between compositions and recordings.  In the

21  context of music, "a composition captures an artist's music in written form."  *James*

22  *W. Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-1249 (C.D. Cal. 2002).   This

23  is, of course, consistent with the ordinary definition of a composition, which

24  Merriam-Webster describes as "a piece of writing."  Recordings, on the other hand,

25  are not "an artist's music in written form;" they are works that result from the

26  fixation of a series of musical, spoken, or other sounds.  *Newton*, 204 F. Supp. 2d at

27  1248-1249.  Recordings have always been considered to be captured

28  "performances" and not compositions.  *See ABKCO Music, Inc. v. LaVere*, 217 F.3d

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

12

684, 688 (9th Cir. 2000) (citing *Goldstein*, 412 U.S. at 564-66 and *White-Smith Music Publishing Co. v. Apollo Co*., 209 U.S. 1, 17 (1908)); *see also Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 552-558 (2005).

When the plain meaning of "composition" is used, the inapplicability of § 983(a) becomes apparent. It is that plain meaning which governs the interpretation of § 983(a). *Smith v. Fair Emp't & Hous. Com*, 12 Cal. 4th 1143, 1225 (1996) ("When interpreting a statute, we normally look first to its plain language, attributing to those words their usual and ordinary meaning."). Indeed, "in the realm of the canons of statutory construction, the plain meaning rule is 'preeminent,'" and "where the plain meaning rule has provided a clear answer, we do not need to look to other canons of statutory construction." *Metro One Telcoms., Inc. v. Comm'r*, 704 F.3d 1057, 1063 (9th Cir. 2012).

Consistent with its plain meaning, the purpose and context of § 983(a) also fully support the conclusion that the legal definition of the term "composition" never included recordings.[5] Section 983(a) was enacted to draw a bright line between when state copyright protection ended and federal copyright protection began. This line was critical for "compositions" in order to facilitate a seamless, uninterrupted hand-off from state protection to federal protection. Conversely, because recordings were not entitled to federal copyright protection, there was no hand-off and a there was no need to draw a dividing line.

In determining where the line should be drawn for compositions, the California legislature was obligated to choose the point at which federal copyright protection began, which up until the 1976 Copyright Act was always considered to

---

[5] "[T]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." *Dyna-Med, Inc. v. Fair Emp't & Hous. Com.*, 43 Cal. 3d 1379, 1387 (1987).

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

be "publication."  Since the time of "the Nation's first copyright statute, enacted in 1790," until the 1976 Copyright Act, "publication" began the term of federal copyright protection for all those works which were eligible for such protection (subject, of course, to compliance with statutory formalities such as notice of copyright and registration).  *Eldred*, 537 U.S. at 195; *see also Goldstein*, 412 U.S. at 564-68; *Bobbs-Merrill Co.*, 210 U.S. 339, 346-47 (1908); *ABKCO*, 217 F.3d at 688; *Naxos*, 4 N.Y.3d at 546-553.  When publication occurred, state protection had to end because state protection and federal protection were not permitted to "coexist." *Bobbs-Merrill Co.*, 210 U.S. at 346-47.  Section 983(a) was the California legislature's way of ensuring that state protection ended with respect to those "works which have been published within the meaning of the [federal copyright] statute." *Id*.

The issue of co-existing state and federal protection was, of course, not relevant to recordings, since they were not copyrightable under federal law when §§ 980 and 983(a) and their prior incarnations were enacted.  What was copyrightable under federal law (and, thus, what was pertinent for purposes of line drawing) were various types of written material, starting with maps, charts, and books in 1790 and extending to historical prints in 1802, musical compositions in 1831, photographs in 1865, and finally paintings, drawings, chromos, statuettes, statuary, and models or designs of fine art in 1870. *Goldstein*, 412 U.S. at fn. 17.  It was against this historical framework that protection for "compositions in letters or art" first appeared in California's Civil Code.

Indeed, in 1872, the California legislature enacted former § 980, which granted an exclusive ownership to "[t]he author of any product of the mind, whether it is an invention, or a composition in letters or art, or a design."  At the same time, the legislature also enacted former § 983, a complementary statute which provided that "[i]f the owner of a product of the mind intentionally makes it public, a copy or reproduction may be made public by any person, without responsibility to the

14

owner, so far as the law of this State is concerned." The limitation of responsibility created by § 983 was not a divestment of rights as Pandora repeatedly contends. The limitation of responsibility simply acted to constrain § 980, respect "the dividing line between common (state) law and statutory (federal) copyright," and ensure that state protection would not "interfere" with federal protection of published works. *See* Code Commissioner's Note of 1874 **(Motion, Ex. 8, p. 4.)**; Leg. Assemb. B. 566, 57th Gen. Sess. (Cal. 1947) ("1947 Leg. Hist.") (Patent, Trademark and Copyright Section of the State Bar of California Report and Recommendation For…Repeal…of Civil Code Section 983(a)) **(Motion, Ex. 10, p. 24-24)**; *see, generally, Stanley v. Columbia Broadcasting System, Inc.*, 35 Cal. 2d 653 (1950) (codification of common law rights in unpublished works by former §§ 980 and 983).

Pandora's willingness to gloss over the purpose and context of former §§ 980 and 983(a) is the only way that it can blur the distinction between compositions and recordings enough to make it appear that those statutes covered recordings when, in fact, they had nothing to do with them at all. Indeed, when Congress first protected musical compositions in 1831 and California first used the term "composition in letters or art" in 1872, there were no such things as recordings – the technology for mechanically reproducing music had not even been invented. *ABKCO*, 217 F.3d at 688. Thus, in 1872, to the extent that music was included in the phrase "composition in letters or art," it could have only been as a musical composition (*i.e.* sheet music) and not a recording.

The definition of "composition" has not changed over time, nor was there any need for it to change, since Congress did not initially provide recordings with federal protection. Even when Congress enacted the 1909 Copyright Act – long after the invention of the phonograph – it still considered records to be "*renderings of [an] original artistic performance*" subject only to "state control," and not copyrightable matter. *Goldstein, supra*, 412 U.S. at 566 (emphasis in original); *see*

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

*also Naxos, supra*, 4. N.Y. 3rd at 552-53 (confirming that because "sound recordings could not be 'published' under federal law, they were [only] eligible for state common law protection."). Thus, there was no need for California to have a line of demarcation between state law and federal law for recordings.

By 1947, Congress still had not changed its view that recordings were not entitled to federal protection. Thus, when the California legislature limited §§ 980 and 983(a) that year to include only "compositions in letters or art," it would have been nonsensical to suddenly encompass recordings in their subject matter. The purpose of the statutes – to demarcate where federal protection of a copyrightable work subsumed state protection of that same work – had not changed, nor had the ineligibility of recordings for such federal copyright protection. Thus, there was once again no need to statutorily draw any line for "handing off" the protection of recordings. Rather, the change in 1947 was to eliminate protection for ideas and ensure that the "publication" lines were drawn in respect of works for which publication actually triggered federal protection. The phrase "composition in letters or art" must be understood in the context of the hand-off that it was intended to effectuate.

When the 1976 Copyright Act became the law, "publication" was replaced by "creation" as the starting point for federal protection. *See Eldred*, 537 U.S. at 194-195. Thus, § 983(a) no longer served any purpose as "publication" was no longer the touchstone. As such, it was repealed in its entirety in 1982. At the same time, § 980(a)(2) was enacted to provide statutory protection for the "actual sounds fixed in" pre-1972 recordings. Under Pandora's theory of the law, the protections provided by § 980(a)(2) were entirely illusory because virtually all pre-1972 recordings were already in the public domain by way of publication. Far from being illusory, the protections provided by § 980(a)(2) were in addition to the protection of the "intangible personal property interest" in the recorded performances in pre-1972 recordings that had long since been provided in California based on the common

law theories of misappropriation and conversion.  The holdings in *Goldstein*, *Erickson*, *Heilman*, *Bluebeat* – and even *Lone Ranger* – put the lie to Pandora's assertion that it is a "universally held [proposition] that the 'publication of a work' divested its common law protection" for pre-1972 recordings.  **(Motion 11:15-16)**  In every one of those cases, the recordings had been published under Pandora's theory of publication, and yet in every one of those cases, liability was still found under the common law or, in the case of *Goldstein*, the penal code.[6]

### 3.   The Sale of Records Has Never Constituted a General Publication of the Sounds.

Aside from being repealed, and aside from not encompassing recordings, § 983(a) does not help Pandora for yet another very important reason – because of their special nature, sound recordings were not "published" under the law.  Those jurisdictions that have addressed this issue have routinely held that publication (in the legal sense) is a concept that is not applicable to recordings.  The rationale for this conclusion is quite simple – if, as Pandora contends, the sale of even one copy of a pre-1972 recording published that recording thereby causing the owner of that recording to be divested of its rights, no one would have ever sold recordings.

This obvious conclusion led to the conclusion that traditional notions of publication simply do not apply to pre-1972 recordings.  For example, in *BlueBeat*, the defendant was sued for violating Civil Code § 980(a)(2), misappropriation, and conversion in connection with its copying, distributing and performing pre-1972 records "purchased…over the counter."  The defendant in *Bluebeat* made exactly the same argument that Pandora is making here; namely, that no liability could be

---

[6] *Goldstein,* 412 U.S. at 548 ("commercially sold recordings"); *Erickson*, 2 Cal. App. 3d at 527 ("musical performances…sold by Capitol"); *Heilman*, 75 Cal. App. 3d at 567 (records "sold by A&M Records"); *Lone Ranger,* 740 F.2d at 726 ("commercial distribution of…recordings"); *Bluebeat,* 765 F. Supp. 2d at 1202 (records "purchased…over the counter").

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

found because all of the recordings had been published by their sale, placing them into the public domain.  That argument was expressly rejected by the *Bluebeat* court.

> Beyond the already rejected argument that "simulations" are independent works, BlueBeat's sole argument as to why it has not misappropriated and converted the pre-1972 Recordings is that Record Companies lack standing to bring claims for the pre-1972 Recordings because such recordings have been "published," i.e. sold, and are now in the public domain....This argument is completely devoid of merit because mere publication of a protected work does not strip protectable and actionable ownership rights.

*BlueBeat*, 765 F. Supp. 2d at 1206.

The holding in *Bluebeat* is fully consistent with the findings of liability in *Goldstein*, *Erickson*, *Heilman* – and even *Lone Ranger*, the centerpiece of Pandora's motion.  Those cases cannot be reconciled with Pandora's claim that recordings lose all of their protection upon the sale of records.  Moreover, the treatment of the publication issue in *Bluebeat* is fully consistent with how it was treated in *Naxos*, the ***actual*** seminal pre-1972 recording case in New York:

> The evolution of copyright law reveals that the term "publication" is a term of art that has distinct meanings in different contexts. With regard to literary works, it has long been the rule that common-law protection ends when a writing is distributed to the public because it is at that point that federal statutory copyright protection controls. [Citations.]  In contrast, in the realm of sound recordings, it has been the law in this state for over 50 years that, in the absence of federal statutory protection, the public sale of a sound recording otherwise

1                unprotected by statutory copyright does not constitute a

2                publication sufficient to divest the owner of common-law

3                copyright protection.

4   *Naxos, supra*, 4 N.Y.3d at 560 (emphasis added); *see also Metro. Opera Ass'n v.*

5   *Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 101 N.Y.S.2d 483 (Sup. Ct. 1950)

6   (holding that the sale of a record to the public was not a general publication and did

7   not end common law copyright protection).

8         While *Naxos* and *Metro. Opera* were decided under New York law, their

9   holdings are both instructive and compelling.  This is especially true given

10   Pandora's attempt to argue that the thoroughly discredited New York case of *RCA*

11   *Mfg. Co. v. Whiteman*, 114 F.2d 86 (2d Cir. 1940) somehow wormed its way into,

12   and defined, California law.  Pandora cribbed this argument from the Motions for

13   Reconsideration that Sirius XM filed in the New York and California actions

14   pending against it.  Like Sirius XM, Pandora ignores the fact that *Whiteman* was

15   expressly overruled almost sixty years ago in *Capitol Records, Inc. v. Mercury*

16   *Records Corp.*, 221 F.2d 657, 663 (2d Cir. 1955).  As the court in *Mercury Records*

17   held, because *Whiteman* was based on the erroneous assumption that the sale of a

18   recording constituted a publication of that recording thereby extinguishing all

19   common law property rights, it "is not the law of the State of New York." *Id*.  The

20   absurdity of reliance on *Whiteman* caused Judge Colleen McMahon to not only deny

21   Sirius XM's motion for reconsideration, but to comment that "[t]the only clear error

22   here is O'Melveny's."  *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2014 U.S. Dist.

23   LEXIS 174907 *4 (S.D.N.Y. Dec. 12, 2014).  Pandora's counsel has apparently

24   decided that making the same clear error is a small price to pay in order to invoke

25   appellate jurisdiction under California's anti-SLAPP statute.

26         *Whiteman* had never been the law in California (or even New York, for that

27   matter), nor has Pandora provided any evidence that *Whiteman* had anything to do

28   with the amendments to former §§ 980 and 983(a).  To the contrary, the evidence

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

submitted by Pandora shows that those amendments were merely intended to eliminate protection for ideas and remove any potential ambiguities that suggested a performance "published" an underlying ***composition***.  *See* Pandora App., Ex. 10 at pp. 24 (notes of the legislative counsel), 32 (notes of the Patent, Trademark and Copyright Conference of the State Bar), 36 (resolution proposed for the Conference of State Bar Delegates), 60 (statement from the *Los Angeles Bar Bulletin*).

Pandora's reliance on *Whiteman* is as hard to explain as its failure to even mention the holding in *Waring v. WDAS Broadcasting Station, Inc.*, 327 Pa. 433 (1937).  *Waring* preceded *Whiteman* and is actually the most enduring case on the issue of whether a pre-1972 recording is published based on a sale.  In *Waring*, the Supreme Court of Pennsylvania found that the sale of an orchestra's recorded performances was not a "general publication" which "abandoned" the records to "public use."  *Id.* at 443-49.  The court reasoned that to hold otherwise would make it, "impossible for distinguished musicians to commit their renditions to phonograph records...without subjecting themselves to the disadvantages and losses which they would inevitably suffer from the use of the records for broadcasting." *Id*, at 447-48.  The reasoning in *Waring* is echoed in *CBS Inc. v. Garrod*, 622 F. Supp. 532, 534-35 (D.C. Fla. 1985).  As the *Garrod* court stated:

> No record producer would distribute a record until enough copies were made to sell to the entire market.  Otherwise, a limited release of a record to a small market would be at great risk.  If the record turns out to be a smash hit, anyone who could buy a copy could then mass-produce more copies and undersell the original producer (who, in addition to the expenses of copying, must also bear the costs of 'enterprise, organization,  skill, labor and money' of getting the musicians, music and recording time.

Pandora does not save any part of its "publication" argument by citing to cases that hold that the sale of a recording constitutes publication of its underlying

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

composition, such as *McIntyre v. Double-A Music Corp.*, 166 F. Supp. 681 (S.D. Cal. 1958) and *Blanc v. Lantz,* 1949 WL 4766 (Cal. Superior Ct. 1949). Those cases are irrelevant and head down a road that Congress expressly rejected. In *McIntyre*, the plaintiff, a music arranger (who had not obtained a federal copyright for his arrangement of a preexisting musical composition when it was first embodied in recordings that were sold to the public) sued the defendant for common law copyright infringement of the arrangement based on the defendant's subsequent use of it. The Court dismissed the claim, holding that the unlimited distribution to the general public of records embodying the arrangement had placed the ***arrangement*** in the public domain. Similarly, in *Blanc*, the court dismissed a common law copyright infringement claim based on the musical composition of Woody Woodpecker's laugh because "the recordation of that laugh on a motion picture sound track for the purpose of distribution for reproduction in commercial theatres throughout the world and the actual distribution of such prints and playing of the sound tracks in such theatres constituted a 'publication' of the plaintiff's ***composition***." Both *McIntyre* and *Blanc* made the same mistake that the Ninth Circuit did in its ill-fated ruling in *La Cienega Music Co. v ZZ Top*, 53 F.3d 950 (9th Cir 1995). Congress rejected the holding in *La Cienega Music* by amending the Copyright Act at 17 U.S.C. § 303(b) to reaffirm that ***at no time*** did sale of a recording publish the underlying compositions. In doing so, Congress "restored national uniformity on this important issue by confirming the wisdom of the custom and usage of the affected industries and of the Copyright Office for nearly 100 years.'" *ABKCO*, 217 F. 3rd at 690-9.

Because Pandora's arguments find no support in the law, it opts instead to misrepresent the Ninth Circuit's holding in *Lone Ranger* by falsely claiming that this case stands for the proposition that the sale of a recording leaves its owner with "no cognizable 'intangible property interest in the performances recorded' at all." **(Motion 19:16-17)** *Lone Ranger* expressly held to the contrary. In ***affirming*** the

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

district court's award of damages for conversion, the court in *Lone Ranger* found that "[u]nder California law, Lone Ranger TV would have an intangible property interest in the performances on tape from the time of their recording." *Lone Ranger*, 740 F.2d at 725.  Based on that interest, the court held that:

> 'A&M Records' action against Heilman for duplicating without consent *performances* embodied in A&M Records' recordings is independent of any action that the owners of the underlying compositions might bring…for copyright infringement….'
> Publication under section 983(a) in effect at the time of the filing of this suit and protection under section 980 concern only copyright.  On the basis of [*Heilman*], Lone Ranger TV's protection against conversion of an intangible property right in the performances embodied in its tapes is unaffected by notions of copyright.  We affirm the district court's summary judgment of damages for conversion under California law.

*Id.* at 726.

The distinction that the *Lone Ranger* court drew between common law protection of the "intangible property right in the performances embodied in" the tapes, and "notions of copyright," is the distinction that has always existed between recordings and compositions.  If, as Pandora contends, *Lone Ranger* held that the performances embodied in the recordings ceased to be protectable upon publication, it would not have affirmed liability for conversion.  That the *Lone Ranger* court was referring to the compositions in its § 983(a) discussion is further evidenced by its citation to *Stanley,* a case which had nothing to with recordings but instead concerned whether the defendant breached an implied-in-fact contract by using plaintiff's underlying script.  A script is the consummate composition.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

## IV. CALIFORNIA STATUTORY AND COMMON LAW PROTECTS OWNERS OF PRE-1972 RECORDINGS FROM ALL UNAUTHORIZED USES.

Pandora's perfunctory argument that California law could not possibly recognize any public performance right in pre-1972 recordings was disposed of by this Court summary judgment ruling in the *Sirius XM* case.  For all the reasons in that opinion, Pandora is wrong.  Pandora's additional argument that "exclusive ownership" in Civ. Code § 980(a)(2) does not mean "exclusive" because 17 U.S.C. § 109 (first sale) acts as an "implied" limitation on California law is not only wrong, but is barred by 17 U.S.C. § 301(c).  Indeed, pursuant to § 301(c), the Copyright Act cannot be used to limit or annul any aspect of California law, which would foreclose its use as an "implied limitation."  Moreover, having shown that it knew how to copy from the Copyright Act when it wanted to, this Court cannot now conclude that it was an oversight for the Legislature not to copy § 109.  *See, e.g., DiCampli-Mintz v. County of Santa Clara*, 55 Cal. 4th 983, 992 (2012).

## V. PANDORA IS LIABLE FOR MISAPPROPRIATION, UNFAIR COMPETITION, AND CONVERSION WHETHER OR NOT IT VIOLATED §980(a)(2).

Pandora argues in its motion that if it is not liable under §980(a)(2), it cannot be liable at all.  This constrained view of California law, unsupported by even *Lone Ranger*, is refuted by basic California law grounded in the scope of property ownership as well as in the Supreme Court's holding in *International News Service v. Associated Press*, 248 U.S. 215, 239-40 (1918) ("[D]efendant, by its very act, admits that it is taking material that has been acquired by complainant as the result of organization and the expenditure of labor, skill, and money, and which is salable

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

23

by complainant for money, and ***that defendant in appropriating it and selling it as its own is endeavoring to reap where it has not sown…***)[7]

Ownership of property (whether tangible or intangible) in California is purposefully broad and carries with it the right to exclude its use by all others.  *See* Civ. Code § 654 (Nature of Property: Ownership Defined: "[t]he ***ownership*** of a thing is the right of one or more persons to possess and *use* it to the exclusion of others") (emphasis added); *see also People* v. *Kwak*, 63 Cal. App. 4th 1236,1251-52 (1998) ("property is something that one has the exclusive right to possess ***and use***"), *citing* Civ. Code § 654 (emphasis added); *Lane v. Whitaker,* 50 Cal. App. 2d 327, 330 (1942) ("[O]wnership is the right of a person to possess and use a thing to the exclusion of others.")  The right to use property to the exclusion of others is not a novel proposition.  Indeed, it is the *sine qua non* of property ownership.  As the Supreme Court stated in *Dickman v. Comm'r*, 465 U.S. 330, 336 (1984):

> Of the aggregate rights associated with any property interest, the right of use of property is perhaps of the highest order.  One court put it succinctly: 'Property' is more than just the physical thing – the land, the bricks, the mortar – it is also the sum of all the rights and powers incident to ownership of the physical thing.  It is the tangible and the intangible.  Property is composed of constituent elements and of these elements the right to *use* the

---

[7] California courts recognized the soundness of *International News Service* and have routinely adopted its basic misappropriation principles.  *See Erickson*, 2 Cal. App. 3d at 532-33, 537; *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1342 (1990); *Hollywood Screentest Of America, Inc.* v. *NBC Universal, Inc.,* 151 Cal. App. 4th 631, 650 (2007).

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1    physical thing to the exclusion of others is the most essential and

2    beneficial.  Without this right all other elements would be of

3    little value….” (citation omitted)

4    Because the right and ability to exclude others from using a pre-1972

5    recording is inherent in the ownership of that recording, the Court does not need to

6    look for a separate affirmative grant of a performance right in order for such a right

7    to exist.  The bundle of rights that comprise ownership is all encompassing and does

8    not require a separate list or grant of enumerated rights.  No case or statute in

9    California has excluded the performance right from the bundle of rights that result

10   from the ownership of the artistic performances embodied in pre-1972 recordings.

11   As with Sirius XM, Pandora does not hide the fact that it has not licensed pre-

12   1972 recordings or paid any royalties in connection with its exploitation of the same.

13   This may explain why Pandora did not submit any evidence to support its motion

14   and instead proceeded as a matter of law.  **(Motion 25:11-12)**  Unfortunately for

15   Pandora, its confidence is belied by the holdings in *Erickson, Heilman,* and *Bluebeat*

16   – and even *Lone Ranger*.[8]

17   ## VI.   <u>CONCLUSION.</u>

18   For all the foregoing reasons, Pandora’s motion to strike the complaint

19   pursuant to California’s anti-SLAPP statute should be dismissed.

20

21   _____

22   [8] Despite submitting no evidence, Pandora claims in a footnote that some of its uses
     of pre-1972 recordings are fair use.  **(Motion  23:22-28)**.  However, Pandora not

23   identify which one, nor does Pandora cite a California case that accepts fair use as a
     defense.  The best that Pandora can do is to cite to *Kramer v. Thomas*, 2006 U.S.

24   Dist. LEXIS 96714 (C.D. Cal. Sept. 28, 2006).  However, that case contains no
     analysis of California law and then, in violation of § 301(c), uses 17 U.S.C. § 107 to

25   limit California law.  In any event, even if the Court was permitted to rely on § 107

26   and the cases decided thereunder, the facts and conduct underpinning Pandora’s
     claim of fair use have already been found to be insufficient under § 107 in *UMG*

27   *Recordings v. MP3.com, Inc.*, 92 F. Supp. 2d 349 (S.D.N.Y. 2000).

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: February 2, 2015          GRADSTEIN & MARZANO, P.C.
                                 HENRY GRADSTEIN
                                 MARYANN R. MARZANO
                                 HARVEY GELLER
                                 DANIEL B. LIFSCHITZ
                                   -and-
                                 EVAN S. COHEN


                                 By: _____ */s/ Harvey Geller*_____
                                            Harvey Geller
                                       Attorneys for Plaintiff
                                        FLO & EDDIE, INC.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100