UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

term 70

| Case No. | CV 14-7648 PSG (GJSx) | Date | October 22, 2020 |
|---|---|---|---|
| Title | Flo & Eddie, Inc. v. Pandora Media, Inc. et al | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers): The Court DENIES Defendant's renewed anti-SLAPP motion to strike.**

Before the Court is a renewed Anti-SLAPP motion to strike by Defendant Pandora Media, Inc. ("Defendant" or "Pandora"). *See* Dkt. # 70-1 ("*Mot.*"). Plaintiff Flo & Eddie, Inc. ("Plaintiff" or "Flo & Eddie") has opposed the motion, *see* Dkt. # 91 ("*Opp.*"), and Defendant replied, *see* Dkt. # 106 ("*Reply*"). After considering the arguments in the moving, opposing, and reply papers, as well as those presented at a hearing on October 21, 2020, the Court **DENIES** the motion.

## I. Background

### A. Factual History

Flo & Eddie Inc. ("Flo & Eddie") is a corporation that is owned and exclusively controlled by Howard Kaylan and Mark Volman, two of the founding members of the 1960s music group "The Turtles." *See Complaint*, Dkt. # 1 ("*Compl.*"), ¶ 7. The Turtles recorded several hit songs between 1965 and 1969, including the iconic track "Happy Together." *See id.* Today, Flo & Eddie own all the rights to The Turtles' master sound recordings. *See id.* ¶ 8. Defendant Pandora is a streaming internet radio service that transmits recordings from its servers to end-users' devices. *See id.* ¶ 1, 4. At issue is whether Pandora illegally copied and broadcasted Flo & Eddie's recordings of The Turtles that were made before February 15, 1972 ("pre-1972 recordings"). *See generally id.*

B. Procedural History

This case was filed more than six years ago, on October 2, 2014. Flo & Eddie asserted the following claims against Pandora on behalf of itself and a class of owners of pre-1972 recordings: (1) violation of Cal. Civ. Code § 980(a)(2); (2) misappropriation; (3) violation of Cal. Bus. & Prof. Code § 17200; and (4) conversion. *See generally* Dkt. # 1. On December 19, Pandora filed its first Anti-SLAPP motion to strike, *see* Dkt. # 22, which the Court denied in February of 2015. *See* Dkt. # 29, ("*February 2015 Order*"). Pandora appealed, *see* Dkt. # 30, and the Ninth Circuit certified two questions to the California Supreme Court regarding California statutory and common law copyright protections for pre-1972 sound recordings. *See Flo & Eddie, Inc. v. Pandora Media, Inc.*, 851 F.3d 950, 951 (9th Cir. 2017).

While these questions were pending before the California Supreme Court, Congress passed the Orrin G. Hatch-Bob Goodlatte Music Modernization Act ("MMA"), Pub. L. No. 115 264, 132 Stat. 3676 (2018). Before the MMA's passage, pre-1972 recordings, like the recordings at issue in this case, were not protected under federal copyright law. *See Mot*. at 1. Instead, state common law and statutes protected the rights of owners of pre-1972 recordings, if at all. *See id*. The MMA brought pre-1972 recordings under the umbrella of federal copyright law, creating federal protection for these recordings and a statutory licensing scheme that mirrors the scheme in place for post-1972 recordings. *See id*. at 14. In the process, the MMA created an affirmative defense for "non-interactive digital services" such as Pandora. *See id*. at 1 2, 14. This defense preempts all common law and state law claims based on transmissions of pre-1972 recordings over the internet so long as the non-interactive digital service complies with several statutory requirements. *See id*. Pandora, among others, lobbied for the MMA's passage. *See id*. at 13; *see also* 164 Cong. Rec. H3522-01, H3536 (daily ed. Apr. 25, 2018) (statement of Mr. Jerry Nadler) ("We are at a unique moment in time where virtually all the industry stakeholders have come together in support of a common music policy agenda. The bill is supported by a broad coalition that includes songwriters and artists, publishers and labels, and internet and digital media companies such as Pandora, Spotify, Google, and Amazon.").

In light of the MMA, the California Supreme Court dismissed consideration of the Ninth Circuit's questions. *See Flo & Eddie, Inc. v. Pandora Media, Inc.*, No. S240649, 2019 WL 5797219, at *1 (Cal. May 22, 2019). The Ninth Circuit then vacated the February 2015 order and remanded the action back to this Court. *See Flo & Eddie, Inc. v. Pandora Media, LLC*, 789 F. App'x 569, 572 (9th Cir. 2019).

On remand, the Court's task is to consider Pandora's renewed anti-SLAPP motion given the MMA's new affirmative defense and "any intervening developments in California's anti-SLAPP law." *See id*. The Court finds that (1) Pandora's broadcasting no longer qualifies as

protected activity under the anti-SLAPP statute, and, (2) even if it did, the MMA does not apply retroactively to pending claims, and, (3) even if it did, there are genuine issues of fact regarding whether Pandora complied with the statutory licensing requirements necessary for preemption. Accordingly, the Court **DENIES** Pandora's anti-SLAPP motion.

## II. Legal Standard

California Code of Civil Procedure § 425.16 provides for a special motion to strike a "strategic lawsuit against public participation" ("SLAPP"). Such a motion, commonly called an "anti-SLAPP motion," allows courts, at an early stage of the proceedings, to dismiss nonmeritorious litigation that challenges various kinds of protected speech. *See Kashian v. Harriman*, 98 Cal. App. 4th 892, 905 (2002); Cal. Code Civ. Proc. § 425.16(b)(1). The anti-SLAPP statute is given full effect in federal court. *See United States v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999).

In ruling on an anti-SLAPP motion to strike, the court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). "The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Id.* (citing Cal. Code Civ. Proc. § 425.16(b)(1)). An anti-SLAPP motion applies to causes of action

> that result from a defendant's (1) oral or written statements "made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law"; (2) any written or oral statement made in connection with an issue under consideration or review by a governmental body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a public place or in a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or of free speech in connection with a public issue or topic of public interest.

*Martin v. Inland Empire Utils. Agency*, 198 Cal. App. 4th 611, 623 (2011) (quoting Cal. Code Civ. Proc. § 425.16(e)).

"If a defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can establish 'a probability that [it] will prevail on the claim.'" *Id.* at 622 (quoting *Simpson Strong-Tie Co., Inc. v. Gore*, 29 Cal. 4th 12, 21 (2010)). "A plaintiff opposing an anti-SLAPP motion bears the burden to make a prima facie showing of facts that would support a judgment in plaintiff's favor." *See HMS Capital, Inc. v. Lawyers Title Co.*, 118 Cal. App. 4th 204, 211 (2004). In making this determination, the court considers "the pleadings, as well as 'supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" *Id.* (quoting Cal. Code Civ. Proc. § 425.16(b)(2)). "In opposing an anti-SLAPP motion, the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial." *Id.* at 212.

"The court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence." *Id.* "Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." *Id.* In other words, "[t]he trial court merely determines whether a prima facie showing has been made that would warrant the claim going forward." *Id.* Accordingly, because this second step of the anti-SLAPP inquiry does not involve the weighing of evidence, the California Supreme Court has described it as an early stage "summary-judgment-like procedure." *See Taus v. Loftus*, 40 Cal. 4th 683, 714 (2007).

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute i.e., that arises from protected speech or petitioning *and* lacks even minimal merit is a SLAPP, subject to being stricken under the statute." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002).

III. Discussion

The Court will address each prong of the anti-SLAPP analysis in turn, considering (1) changes in anti-SLAPP law since the Court denied Pandora's first motion and (2) the passage of the MMA.

A. Pandora's Protected Activity

The defendant has the initial burden in an anti-SLAPP motion of demonstrating that the plaintiff's claims arise out of an act in furtherance of the defendant's "protected activity." *Equilon*, 29 Cal. 4th at 67. The Ninth Circuit has explained that a showing under this first prong "contains two distinct components." *See Hilton v. Hallmark Cards*, 599 F.3d 894, 903 05 (9th Cir. 2009). Pandora must show that it was engaged in conduct: "(1) in furtherance of the right of free speech, and (2) in connection with an issue of public interest." *See Doe v. Gangland*

*Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013) (citing Cal. Civ. Proc. Code § 425.16(a), (e)(4)).

In its opposition to Pandora's renewed anti-SLAPP motion, Flo & Eddie challenge both components of the first anti-SLAPP prong, arguing that recent decisions from the Ninth Circuit and the California Supreme Court establish that Pandora's conduct is not protected activity as defined by California's anti-SLAPP law. *See Opp*. at 7 11. The Court agrees with Flo & Eddie and addresses each component of the protected activity prong in turn.

*i. Whether Pandora's conduct was in furtherance of a free speech right*

Previous Ninth Circuit decisions construed this question broadly, observing that "the courts of California have interpreted this piece of the defendant's threshold showing rather loosely" and that "it seems to suffice . . . that the defendant's activity is communicative[.]" *See Hilton*, 599 at 904. However, a recent Ninth Circuit decision imposed a narrower standard, requiring courts to pinpoint exactly the conduct at issue in the case and determine "whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190 (9th Cir. 2017) (quoting *Naveliier*, 29 Cal. 4th at 89). "[F]or purposes of anti-SLAPP, the conduct from which the claim arises is the conduct that constitutes the specific act of wrongdoing challenged by the plaintiff." *See id.* at 1191.

Flo & Eddie define the conduct at issue as Pandora's failure to pay to copy and broadcast Flo & Eddie's recordings. *See Opp*. at 10. According to Flo & Eddie, the Ninth Circuit's decision in *Jordan-Benel* establishes that claims involving a failure to pay, like the claims at issue in this case, are not protected by anti-SLAPP. *See Opp*. at 9. In *Jordan-Benel*, the plaintiff brought an implied-in-fact contract claim against several film industry defendants for allegedly using his screenplay without providing compensation. 859 F.3d at 1188. The Ninth Circuit held that the plaintiff's claim arose from the defendants' failure to pay for the plaintiff's idea rather than the creation, production, distribution and content of the film itself. *See id*. at 1190. Because "the 'overall thrust of the complaint' challenge[d] Defendants' failure to pay for the use of his idea," the claim arose from a failure to pay, not the creation of the film, and therefore was not protected by the anti-SLAPP statute. *See id*.

Accordingly, "[a]t the outset," the Court must "determine the precise claim at issue" when analyzing an anti-SLAPP motion. *See id*. at 1189. The Court does so by considering the claims in the complaint and the specific conduct on which they are based. *See id*.

Flo & Eddie brings four claims against Pandora: (1) violation of Cal. Civ. Code § 980(a)(2); (2) misappropriation; (3) violation of Cal. Bus. & Prof. Code § 17200; and (4) conversion. *See generally Compl*. Through these claims, Flo & Eddie "seeks backpay for the sound recordings Pandora has already exploited." *See Opp*. at 10.[1] Flo & Eddie takes no issue with Pandora broadcasting its songs, it takes issue with Pandora's "failure to pay for its exploitation of intellectual property." *See id*. Thus, like in *Jordan-Benel*, the "overall thrust of the complaint" is Pandora's failure to pay, not Pandora's broadcasting itself.

Pandora attempts to distinguish *Jordan-Benel* by describing its conduct broadly as "music" or "broadcasting" rather than a failure to pay. *See Reply* at 1 2. But this broad definition ignores *Jordan-Benel*'s requirement that defendants consider the *specific* conduct that plaintiffs allege is wrongful. *See Jordan-Benel*, 859 F.3d at 1189 (requiring defendants to precisely define their conduct when bringing an anti-SLAPP motion). Flo & Eddie does not challenge Pandora's right to broadcast generally, it challenges Pandora's right to exploit pre-1972 recordings without compensation. *See Opp*. at 8 9. Pandora makes no attempt to argue that a failure to pay furthers a free speech right.

Furthermore, the fact that Pandora's conduct involves expressive activity does not automatically provide it with anti-SLAPP protection. *See Jordan-Benel*, 859 F.3d at 1191 (finding the anti-SLAPP statute does not apply even where "the creation of [the] films was not collateral to the principal purpose of the transaction"); *see also Duncan v. Cohen*, No. C 08-2243 BZ, 2008 WL 2891065 (N.D. Cal. Jul. 22, 2008) (holding that the anti-SLAPP statute does not apply to an action based on copyright and contract claims where the defendant made a film based on the plaintiff's book). Thus, because Flo & Eddie's claims arise from Pandora's failure to pay to exploit pre-1972 recordings, rather than Pandora's expressive conduct itself, Pandora's conduct did not further the right of free speech. Accordingly, the anti-SLAPP statute does not apply to Pandora's broadcasting and copying, and the Court **DENIES** the motion on this ground. However, even if the Court found otherwise, it would still deny the motion.

*ii. Whether Pandora's conduct was in connection with an issue of public interest*

Even if Pandora's conduct is in furtherance of a free speech right, Pandora has failed to show that its broadcasting was in connection with an issue of public interest. If Pandora's

[1] While the original complaint, still unamended, seeks injunctive relief, *see Compl*. at 14 15, Flo & Eddie conceded at the hearing that the MMA preempts claims for transmissions of pre-1972 recordings made after the MMA's passage in 2018. Thus, Flo & Eddie is no longer seeking injunctive relief, and instead it is only seeking damages for broadcasting activity conducted before the MMA's passage.

conduct is protected under the anti-SLAPP statute, it falls within § 425.16(e)(4)'s catchall provision, which protects "any other conduct in furtherance of the exercise of the constitutional right of petition or of free speech in connection with a public issue or topic of public interest." Cal. Code Civ. Proc. § 425.16.

In its 2019 decision *FilmOn*, the California Supreme Court laid out a two-part test for determining whether activity is "in connection with" an issue of public interest under the catchall provision. *See FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149 50 (2019). First, courts examine the content of the speech to determine what public issue the speech implicates. *See id*. Second, courts ask "what functional relationship exists between the speech and the public conversation about some matter of public interest." *See id*. When analyzing the relationship between the speech and the public conversation, courts should consider the context in which the statement was made, such as the identity of its speaker, the audience sought, or the purpose for making the statement. *See id*. at 149 55.

Flo & Eddie contends that the issue of public interest is "the underlying music itself," *see Opp*. 8:19 21, and that Pandora's copying and uncompensated transmission of the music is not related to the public conversation because Pandora "had no hand in creating" the music, *see id*. 9:14 19. In other words, according to Flo & Eddie, the fact that Pandora only reproduced the music for profit, rather than creating any new expression, means that Pandora has not contributed to the public debate. *See id*.

In response, Pandora argues that California courts have consistently recognized that "broadcasting is conduct in furtherance of free speech in connection with an issue of public interest under California's anti-SLAPP statute." *See Reply* 1:17 20. However, it is not enough that "music" and "broadcasting" are *associated* with speech. *FilmOn* makes clear that defendants have the burden of showing that their speech in fact *contributed to* the conversation. 7 Cal. 5th at 149 150; *see Serova v. Sony Music Entm't*, 44 Cal. App. 5th 103, 116 (2020) ("[T]he court in *FilmOn* confirmed the need for a party moving for anti-SLAPP relief to show a relationship between the challenged speech and the public conversation about some matter of public interest." (citations omitted)).

Furthermore, all the cases Pandora cites concern speech *creation*, not solely speech reproduction or broadcasting, without more. For example, in *Gangland*, the Ninth Circuit found that broadcasting an interview that defendants had conducted themselves was an act in furtherance of the defendants' free speech rights. 730 F.3d at 953 54. Similarly, in *Serova*, the California appellate court determined that marketing statements the defendants themselves had

made furthered the public discourse. 44 Cal. App. 5th at 118 20. Thus, Pandora fails to support its position that copying and broadcasting another artist's work, on its own, falls within the anti-SLAPP catchall provision.

Additionally, considering the context of Pandora's speech  the (1) audience, (2) purpose, and (3) speaker  leads to the conclusion that it is not protected activity. Pandora is correct that the public nature of its broadcasting weighs in favor of finding it protected under the anti-SLAPP statute. *See Reply* 2:13 14. But *FilmOn* states that "no single element is dispositive." *See* 7 Cal. 5th at 153. Thus, even though (1) Pandora's speech was broadcasted publicly, it is not protected activity because (2) it was made for commercial purposes, and (3) the speaker, Pandora, was not involved in creating the content of the speech.

In an anti-SLAPP analysis, the defendant has the burden of showing that its speech is a protected activity that contributes to an issue of public interest. *See id*. at 110. Because Pandora has not established that its copying and reproduction of an artist's music contributed to an issue of public interest, Pandora has failed to meet its burden on the first prong. Accordingly, the Court **DENIES** the motion on this alternative ground. However, even if the Court concluded otherwise, it would still deny the motion.

B. <u>Flo & Eddie's Likelihood of Prevailing on the Merits</u>

Even if Pandora's activity were protected under the anti-SLAPP statute, the Court would still deny the motion because Flo & Eddie has established a likelihood of prevailing on the merits. First, the MMA does not preempt actions pending at the time of its passage. Second, even if it did, Flo & Eddie has raised genuine disputes as to whether Pandora has complied with the statutory requirements for preemption. Third, Flo & Eddie's claimed state law public performance rights exist.

*i. Whether the MMA preempts Flo & Eddie's claims*

The MMA provides federal copyright protection for pre-1972 sound recordings and creates a statutory licensing scheme that non-interactive digital services, like Pandora, can rely on in lieu of obtaining direct licenses from the owners of the recordings. 17 U.S.C. § 1401; *Mot*. 14:2 6. In exchange for this federal protection, the Act contains two provisions that expressly preempt state law claims related to digital uses of pre-1972 recordings: 17 U.S.C. § 301(c) and § 1401(e).

Section 301(c) expressly preempts state law claims related to digital uses of pre-1972 recordings that occur on or after October 11, 2018  the date of the enactment of the MMA. *See*

*id*. § 301(c). Section 1401(e) "preempts any claim of common law copyright or equivalent right under the laws of any State arising from a digital transmission or reproduction" of a pre-1972 recording made before October 11, 2018, so long as two conditions, explained in detail in the next section, are satisfied. *See id*. § 1401(e)(1).

Although § 1401(e) preempts "any" claim based on transmissions made before the MMA's enactment, Flo & Eddie argues that § 1401(e)(1) does not apply retroactively to claims pending at the time of the MMA's enactment. *See Opp*. at 11 12.

When assessing whether "a new federal statute [should] be applied to pending cases," the court must "first ask whether Congress has expressly prescribed the statute's proper reach." *Martin v. Hadix*, 527 U.S. 343, 352 (1999) (citations omitted).

Pandora contends that Congress expressly prescribed the temporal reach of the MMA in the statutory text by preempting "any claim" arising from transmissions made before the MMA's enactment. *See Reply* 5:10 25. However, statutory language must demonstrate a "clear congressional intent" and provide an "unambiguous directive" or "express command" that it is to be applied retroactively. *See Landgraf v. USI Film Prods*., 511 U.S. 244, 263, 280 (1994). There is no such directive or command in the MMA.

Congress could have expressly stated that § 1401(e) preemption applies to pending claims, *see id*. at 260 (Congress clearly intended a statute to be retroactive by stating it applied "to all proceedings pending on or commenced after the date of enactment"), but it did not. Thus, Congress did not expressly prescribe the temporal reach of the statute. *See Hadix*, 527 U.S. at 353 55 (finding that Congress did not expressly mandate the temporal reach of a statute that applied to "any action," and that the statute set substantive rather than temporal limits).

Pandora further argues that §§ 301(c) and 1401(e) "act in tandem to ensure that *all* state law claims based on digital uses of pre-1972 sound recordings are subject to preemption." *See Reply* 5:17 19. But the text of § 301(c) demonstrates that Congress did not expressly prescribe § 1401(e)'s reach. In § 301(c), Congress explicitly preempts claims based on "activities that are commenced on and after the date of" the MMA's enactment. 17 U.S.C. § 301(c). Congress did not include similar language in § 1401(e), and instead stated that the section applies to "any claim." *Id*. § 1401(e). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. Unites States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th

Cir. 1972)). Because Congress included prescribing language in one section but not the other, the Court presumes that Congress intended to exclude express language from § 1401(e). *See United States v. Gonzalez*, 520 U.S. 1, 5 (1997) (presuming Congress acted intentionally when it included limiting language in one phrase but excluded limiting language in another phrase in the same statute).[2]

Because Congress did not expressly prescribe the proper reach of § 1401(e), "we must determine whether application of this section in this case would have retroactive effects inconsistent with the usual rule that legislation is deemed to be prospective." *Hadix*, 527 U.S. at 357. If Pandora's construction is correct, § 1401(e) "would strip owners of pre-72 recordings of rights of action property interests in royalties owed that were asserted before the MMA's enactment." *See Opp*. 12:17 20. Pandora does not contest that owners such as Flo & Eddie would lose their property interests in pending lawsuits. *See Reply* at 5 6. Thus, because the MMA would have retroactive effects, the Court assumes that the MMA does not apply to Flo & Eddie's conduct. *See Landgraf*, 511 U.S. at 280.

Accordingly, Flo & Eddie has shown a likelihood of prevailing on the retroactive preemption issue.

*ii. Whether Pandora qualifies for § 1401(e)(1) preemption*

Even if the MMA applied retroactively, Flo & Eddie has raised genuine issues of fact as to whether Pandora qualifies for § 1401(e)(1) preemption. Section 1401(e)(1) requires that Pandora establish (1) pre-MMA compliance with the requirements for statutory licensing found in §§ 114(d)(2) and 112(e)(1); and either (2) notice of use and payment, within 270 days of the MMA's passage, for all transmissions and reproductions of pre-1972 recordings during the three years before enactment of the MMA ("three-year period"); or (3) a settlement agreement waiving liability. 17 U.S.C. § 1401(e)(1). Flo & Eddie argues that Pandora has not complied with these requirements because it (1) made phonorecord reproductions in excess of those allowable under § 112(e)(1), and (2) failed to notice use of or pay for all transmissions and reproductions of Flo & Eddie recordings during the three-year period. *See Opp*. at 12 16.

---

[2] At the hearing, Pandora argued that the title of § 1401(e) "Preemption with respect to certain *past acts*" indicates that the section applies retroactively. But "past acts" refers to past *transmissions*, not past *claims*, as the first paragraph of the section applies to "any claim . . . arising from a digital audio transmission or reproduction that is made before the date of enactment of this section." *See* 17 U.S.C. § 1401(e).

*a. Statutory licensing under § 112(e)(1)*

Section 112(e)(1), along with accompanying federal regulations, sets forth specific limitations on the number and types of phonorecord copies that a transmitting entity may create while operating a non-interactive service. *See Opp*. at 16 17; 17 U.S.C. § 112(e)(1). These requirements include:

- Any phonorecord copy must be "retained and used solely by the transmitting organization that made it, and no further phonorecords are reproduced from it." 17 U.S.C. § 112(e)(1)(A).

- "Unless preserved exclusively for purposes of archival preservation, the phonorecord is ***destroyed within 6 months*** from the date the sound recording was first transmitted to the public using the phonorecord." 17 U.S.C. § 112(e)(1)(C) (emphasis added).

- The transmitting entity is generally permitted to make "no more than 1 phonorecord of the sound recording," with the limited caveat that regulations permit a transmitting entity to create additional "ephemeral recordings" (i.e., temporary copies) as are both "necessary and commercially reasonable." 17 U.S.C. § 112(e); 37 C.F.R. § 380.10(d).

- The transmitting entity must make phonorecord copies "from a phonorecord lawfully made and acquired under the authority of the copyright owner." 17 U.S.C. § 112(e)(1)(D).

*See Opp*. at 16 17.

Flo & Eddie argues that Pandora violated these requirements by (1) creating multiple, indefinitely maintained copies of every pre-1972 sound recording in its library, (2) retaining copies for purposes other than archival preservation ("Archival Copies") for longer than six months, and (3) making additional copies from Archival Copies and two pirated compilation albums. *See id*. at 16 20.

Pandora counters that "the current federal regulations allow [it] to make an unlimited number of copies, so long as those copies are 'necessary and commercially reasonable for making noninteractive digital transmissions.'" *See Reply* 13:7 10 (quoting 37 C.F.R. §

380.10(d)). According to Pandora, the copies it makes are necessary "to play these songs on its service." *See Reply*. 12:22 23. Pandora also argues that the copies it maintains for longer than six months are Archival Copies as defined in § 112(e)(1)(C), *see id*. 13:14 15, and that any copies not permitted under § 112(e) constitute fair use under 17 U.S.C. § 107, *see id*. 14:12 15:10.

While courts are to conduct a "summary-judgment-like" analysis on an anti-SLAPP motion, the inquiry is whether the plaintiff's suit likely has merit, not whether the plaintiff has in fact succeeded. *See Taus*, 40 Cal. 4th at 714 ("[T]he court's responsibility is to accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law."). Here, Flo & Eddie has raised genuine issues of fact as to whether Pandora qualifies for preemption because it is unclear whether Pandora made copies of Flo & Eddie tracks that are unauthorized under § 112(e) or whether those copies were kept for longer than 6 months in violation of § 112(e).

*b. Notice of use and payment for all transmissions of pre-1972 recordings the three-year period*

Pandora claims it noticed and paid for all transmitted sound recordings by The Turtles during the three-year period through a $8,942,842.11 royalties' payment it made to SoundExchange a collective rights entity charged with collecting statutory royalties to ensure compliance with §§ 114 and 112. *See Mot*. at 20. According to Pandora, transmissions not covered under the payment to SoundExchange were paid for under two other agreements: (1) an agreement with The Orchard, Flo & Eddie's digital distributor, for a license to Flo & Eddie songs reproduced on or after September 12, 2016; and (2) a settlement agreement between Pandora and several major record labels including 64 tracks by The Turtles. *See Reply* at 7 8.

Flo & Eddie contends that Pandora excluded 3,359 sound transmissions from its calculations, and thus has not paid for every transmission as required by § 1401. *See Opp*. at 13. Further, Flo & Eddie argue that Pandora did not comply with the notice-of-use prerequisite of § 1401(e)(1) as to these 3,359 transmissions. *See id*. at 16.

Pandora admits that there is a dispute as to whether Pandora owes Flo & Eddie for the 3,359 transmissions, *see Reply* at 10, and instead argues that, because the value of these transmissions is only worth $6.02, the dispute does not bar preemption, *see id*. at 8. The Court is not convinced by Pandora's argument that it should ignore this dispute because of its allegedly low value. Pandora also argues that disputes over collection and calculation of royalties should be decided through the SoundExchange auditing process, rather than in this Court. *See id*. 11:13 26. But Pandora was required to comply with § 1401(e)(1)'s requirements by the

statutory deadline which was 270 days after the passage of the MMA. Thus, even if the auditing process applies, there is still a dispute as to whether Pandora paid for *all* transmissions by the deadline. Furthermore, Pandora does not contest Flo & Eddie's argument that Pandora failed to comply with the § 1401(e) notice-of-use prerequisite.

Accordingly, at this stage, Flo & Eddie has shown a likelihood of success in establishing that Pandora has not satisfied its requirements under the MMA.

*iii. Whether the claimed state law rights exist*

Pandora argues that even if the MMA does not preempt Flo & Eddie's claims, California copyright law does not protect the right Flo & Eddie asserts the right of public performance in pre-1972 recordings. *See Mot*. at 22 25. To support its argument, Pandora relies on cases decided based on the common law of *other states* holding that no analogous right exists *in those states*. *See id*.

The Court has addressed this issue twice already, *see February 2015 Order* at 7 14; *see also Flo & Eddie Inc. v. Sirius XM Radio Inc.*, No. CV 13-5693 PSG RZX, 2014 WL 4725382 (C.D. Cal. Sept. 22, 2014), and will not revisit the issue for a third time. Pandora's argument that courts in other states determined that those states did not have analogous copyright protection is unconvincing. Importantly, unlike California, none of the states Pandora mentions have a statute that expressly and unambiguously provides owners of pre-1972 recordings with "exclusive" ownership rights. *See, e.g.*, *Flo & Eddie v Sirius XM Radio, Inc.*, 70 N.E.3d 936, 951 n.7 (N.Y. 2016) ("[I]n the California action, defendant's liability was established under a state statute providing a right of public performance in sound recordings. This highlights our conclusion that such a right is most appropriately created and defined by a legislative body."); *Sheridan v. iHeartMedia, Inc.*, 255 F. Supp. 3d 767, 770 (N.D. Ill. 2017) ("Illinois has no state copyright statute governing sound recordings, unlike . . . California."). Furthermore, Pandora does not address Flo & Eddie's allegations of unauthorized copying. *See generally Mot.*; *see also Opp*. at 24:4 16. Thus, the Court reasserts that the claimed state law rights exists.

Accordingly, Flo & Eddie has demonstrated that its claims are meritorious enough to withstand the anti-SLAPP motion. As such, the Court **DENIES** Pandora's motion on this alternative ground.

C. Attorneys' Fees and Costs

Flo & Eddie argues that Pandora's renewed anti-SLAPP motion is frivolous and requests that the Court award it fees and costs. *See Opp*. at 24 25. According to the anti-SLAPP statute, a prevailing plaintiff is entitled to attorneys' fees and costs if the special motion to strike was frivolous or solely intended to cause delay. *See* Cal. Code Civ. P. § 425.16(c). "Frivolous in this context means that any reasonable attorney would agree the motion was totally devoid of merit." *L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Assn. of Los Angeles*, 239 Cal. App. 4th 918, 932 (2015) (quoting *Gerbosi v. Gaims, Weil, West & Epstein, LLP*, 193 Cal.App.4th 435, 450 (2011)).

Pandora's motion was not "totally devoid of merit" because it was filed after a new federal statute changed the legal landscape entirely. While Pandora was unsuccessful in its arguments, reasonable attorneys could disagree as to whether its arguments were meritorious.

Accordingly, the Court **DENIES** Flo & Eddie's request for fees and costs.

IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's renewed anti-SLAPP motion to strike and **DENIES** Plaintiff's request for attorneys' fees and costs.

**IT IS SO ORDERED.**