Kalpana Srinivasan (SBN 237460)
ksrinivasan@susmangodfrey.com
Steven G. Sklaver (SBN 237612)
ssklaver@susmangodfrey.com
Rohit D. Nath (SBN 316062)
rnath@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Henry Gradstein (SBN 89747)
hgradstein@gradstein.com
Maryann R. Marzano (SBN 96867)
Mmarzano@gradstein.com
**GRADSTEIN & MARZANO, P.C.**
1801 Century Park East, 16th Floor
Los Angeles, CA 90067
Telephone: (323) 776-3100

Stephen E. Morrissey (SBN 187865)
smorrissey@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

Attorneys for Plaintiff
Flo & Eddie, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PANDORA MEDIA, LLC, a Delaware corporation; and DOES 1 through 100,<br><br>Defendants. | Case No. 2:14-cv-07648-PSG (GJSx)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1. **VIOLATION OF CALIFORNIA CIVIL CODE § 980(a)(2);**<br>2. **MISAPPROPRIATION;**<br>3. **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200; and**<br>4. **CONVERSION**<br><br>**DEMAND FOR JURY TRIAL** |

**REDACTED VERSION**

---

1

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Flo & Eddie, Inc. ("Flo & Eddie"), on behalf of itself and on behalf of all other similarly situated owners of sound recordings, hereby complains and alleges as follows:

## PRELIMINARY STATEMENT

1. This case is about Defendant Pandora Media, LLC's ("Pandora") systematic violation of California law prohibiting unauthorized duplication of pre-1972 sound recordings. During the relevant damages period of this case from October 2, 2011, to October 10, 2018 (the last day before the effective date of the Classics Protection and Access Act), Pandora made hundreds of thousands, if not millions, of permanent server copies of pre-1972 sound recordings in California, and billions of "transmission copies" of those recordings, without the consent or authority of Flo & Eddie and other similarly situated owners of pre-1972 sound recordings. Pandora made these copies for the commercial purpose of making them available through Pandora's streaming media servers to users and subscribers in California and the United States.

2. The essence of copyright protection, as the name suggests, is protection from unauthorized copying of an author's work for financial gain. Until the passage of the Classics Protection and Access Act, effective October 11, 2018, copyright protection for sound recordings fixed before February 15, 1972 ("pre-1972"), remained the exclusive province of state law. *See* 17 U.S.C. §§ 301(c); *id.* § 1401. California has been at the forefront of state protection of property rights for authors and owners of pre-1972 sound recordings. In 1968, with the advent of cassette tape technology permitting cheap and easy copying of sound recoridngs, the legislature criminalized the "misappropriation of recorded music for commercial advantage or private financial gain." Cal. Penal Code § 653h. Civil protection prohibiting unauthorized copying of pre-1972 sound recordings under common law theories of misappropriation and conversion quickly followed. *Capitol Records v. Erickson*, 2 Cal.App.3d 527, 538 (1969); *A&M Records v. Heilman,* 75 Cal. App. 3d 554, 569-

70 (1977). And in 1982, the California enacted Civil Code § 980(a)(2) which provided state copyright protection for sound recordings fixed prior to February 15, 1972.

3. Thus, for more than half a century, California common law and statutes have protected owners of pre-1972 sound recordings from the unauthorized reproduction of their sound recordings for financial gain. Pandora is liable to Flo & Eddie, and all other similarly situated owners of pre-1972 sound recordings, under California law for (1) violation of California Civil Code § 980(a)(2), (2) misappropriation, (3) violation of California Business & Professions Code § 17200 *et seq.*, and (4) conversion.

## THE PARTIES

4. Flo & Eddie is a corporation duly organized and existing under the laws of California, with its principal place of business in Los Angeles, California.

5. Flo & Eddie is owned by Howard Kaylan and Mark Volman, two of the founding members of the enormously popular band The Turtles. The Turtles are widely recognized as one of the most influential bands of the 1960s and are notable for their string of Top 40 hits, including "Happy Together," "It Ain't Me Babe," "You Baby," "She'd Rather Be with Me," "Elenore," and "You Showed Me."

6. Through a series of transactions, Flo & Eddie acquired the exclusive ownership in all The Turtles' Recordings, all pre-1972 sound recordings, the titles of which are specified on the attached Schedule "A" and incorporated herein by reference ("The Turtles' Recordings").

7. At all relevant times, Flo & Eddie has been and continues to be engaged in the business of distributing, selling, and/or licensing the master use, reproduction, distribution, sale, and performance of The Turtles' Recordings including in records, audiovisual works and for streaming and downloading over the Internet.

8. Pandora is a corporation duly organized and existing under the laws of

Delaware, with its principal place of business in Oakland, California, and Santa Monica, California.

9. Pandora owns and operates a web-based music streaming service (the "Music Service") which is designed to deliver uninterrupted, high-quality streams of music tailored and customized to its users' preferences. Subscribers throughout California and the United States are afforded the ability to stream unique self-curated musical stations on their devices from copies of sound recordings on Pandora's servers, or to stream musical stations initially curated by Pandora (and other moderators) based on defined musical categories and genres. Pandora's streaming service gives the subscriber the limited ability once an initial song or curated station is selected, to skip songs, to use thumbs up and thumbs down buttons to determine whether similar songs should be played on the station, and to prevent songs from being played again.

## JURISDICTION AND VENUE

10. Jurisdiction exists pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the sum or value of $25 million (exclusive of interest and costs), is a class action in which a member of a class of plaintiffs is a citizen of a state different from Pandora, and the number of members of the proposed class exceeds 100.

11. This Court has personal jurisdiction over Pandora because: (a) Pandora is located and has its principal place of business in California, (b) Pandora engaged in tortious conduct in California by making unauthorized copies of pre-1972 sound recordings for commercial advantage in the state, and (c) Pandora's conduct causes injury to Flo & Eddie and the putative class members in California.

12. Venue in this District exists pursuant to 28 U.S.C. § 1391(b) and (c) because Pandora resides and is subject to personal jurisdiction in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

# FACTS COMMON TO ALL CLAIMS CONCERNING PANDORA'S ILLEGAL COPYING

13.  The Music Service is provided by Pandora to paying and non-paying members of the public in California and elsewhere and delivers and streams music through its website (www.pandora.com) to users' computers and to smart phones and tablets through its downloadable Android and iOS App. Among the sound recordings that Pandora reproduces and distributes are The Turtles' Recordings.

14.  According to Pandora, as of December 31, 2013, it had more than 200 million registered users, including over 70 million monthly active users. Pandora's users have reportedly created over 10 billion individual music stations requiring over 400 billion individual streams per year. .

15.  Throughout the damages period, Pandora understood that having a vast range and array of music was critical to the success of any music service, which is why pre-1972 recordings constitute a significant part of the Music Service. Pandora offered and advertised stations dedicated to pre-1972 recordings, such as "50s Rock 'n' Roll," "60s Oldies," "Motown," "Doo-Wop," "70s Folk," "Early Jazz," "Standards," "Classic Soul," "Jam Bands," and "Classic Rock." Pandora promoted these stations in order to establish and increase its user base, popularity, and revenue.

16.  In order to populate the Music Service's databases and in order to stream musical recordings to the public, Pandora has reproduced and copied and continues to reproduce and copy pre-1972 recordings, including to hundreds of its computer servers located in Califonia and the United States as alleged below, and uses technology or systems that result in a copy of pre-1972 recordings being distributed to its users' computers or storage devices.

17.  Pandora is aware that it made copies of The Turtles recordings and other pre-1972 recordings without a license or other authority from the sound recording owners. Pandora is also aware which of the recordings it reproduces or

distributes via the Music Service are pre-1972 recordings. Not only does Pandora provide biographical information about each artist and the artwork for the albums containing the pre-1972 recordings that it is reproducing, performing, distributing or otherwise exploiting, but Pandora analyzes each individual song that it streams. Pandora boasts of its "Music Genome Project" that consists of a database of millions of uniquely-analyzed songs from hundreds of thousands of artists, which Pandora says it "develops one song at a time by evaluating and cataloging each song's particular attributes." As Pandora has stated on its website:

> "We believe that each individual has a unique relationship with music – no one else has tastes exactly like yours. So delivering a great radio experience to each and every listener requires an incredibly broad and deep understanding of music. That's why Pandora is based on the Music Genome Project, the most sophisticated taxonomy of musical information ever collected. It represents over ten years of analysis by our trained team of musicologists, and spans everything from this past Tuesday's new releases all the way back to the Renaissance and Classical music."

18. Pandora's entire business has been built around selling access to music and selling the music itself. During the damages period, Pandora did this in two ways. Pandora delivered audio advertisements to its users in between songs and displayed visual ads while music is actually playing. In addition, for a monthly fee of $4.99, Pandora offered a premium service called "Pandora One," which was advertisement free.

19. While under California law, the owner of a pre-1972 sound recording does not have the exclusive right to publicly perform that recording for profit, the sound recording owner still retains the exclusive right of reproduction. Thus, unauthorized copies may not be made from a lawfully acquired copy of a sound

recording to increase exponentially the geographic reach of public performance without the consent of the owner. Pandora may play a lawfully purchased copy of a sound recording as many times and in as many places as it wants. But that is not what Pandora did. For Pandora's systems to be capable of simultaneously streaming millions of sound recordings to the over 10 billion individual music stations created by its hundreds of millions of subscribers, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and millions of temporary transmission copies of each recording, including pre-1972 recordings.

20. During the relevant damages period, Pandora's methodology for making the requisite additional copies involved several steps. First, Pandora made initial digital copies of the sound recordings, including pre-1972 sound recordings, by "ingesting" the audio file from physical CDs or DVDs, or by purchasing and downloading MP3s such as through iTunes or Amazon. Pandora's ingestion process converted the sound recording file format to what is known as a "256k MP3" file. The team responsible for creating the ingestion copies and converting them into the 256k MP3 file (and eight additional file formats as further described below), was at all relevant times based out of California. Until at least September 2016, such copying occurred in Pandora's offices in Oakland, California. Back-up copies of each of the ingested recordings were then made and stored, including on Pandora's servers in California. The ingestion copies (which Pandora also calls archive copies) and back-up copies have never been destroyed, but rather have been maintained on Pandora's servers in perpetuity.

21. From the ingestion copy, Pandora then made numerous additional digital copies of the sound recordings. Specifically, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ▮
2 ▮
3 ▮
4 ▮
5 ▮

6  22. In addition to these permanent server copies, Pandora also made a temporary "transmission copy" of each of the sound recordings on its servers every time Pandora streamed that sound recording to a subscriber. Each transmission copy remained on Pandora's servers as a full and complete copy until the buffered transmission, which is what a subscriber received, was complete.

11  23. Between 2011 and September 2016, Pandora made multiple permanent digital copies of each of The Turtles' recordings in California, including approximately 128 first ingestions of the audio files. None of these permanent copies were licensed by Flo & Eddie. Thereafter, Pandora made additional permanent digital copies in California from these ingestion copies during the damages period, including back-up copies, ▮

▮

including San Jose, California, and innumerable transmission copies, none of which were licensed or authorized by Flo & Eddie.

22  24. Flo & Eddie is informed and believes, and alleges thereon, that approximately 35,000 pre-1972 sound recordings owned by similarly situated owners of pre-1972 recordings, were copied by Pandora in California during the damages period by ingesting them from the audio files, none of which were licensed or authorized by such similarly situated owners. Flo & Eddie is further informed and believes, and alleges thereon, that, Pandora thereafter made additional permanent digital copies from the ingestion copies in California during the damages period,

1 including ████████████████████████████████████████
2 ████████████████████████████████
3 ████████████████████████████████████████████
4 ██████████████████████████████ including
5 San Jose California, and millions of transmission copies, none of which were
6 licensed or authorized by such similarly situated owners.

    25.    Pandora's unlicensed copying injured Flo & Eddie and other owners of pre-1972 recordings. These copies enabled Pandora to expand the geographic scale and scope of its operations, allowing Pandora not just to stream pre-1972 recordngs locally, but also to reproduce and distribute those pre-1972 recordings to stream nationwide to millions of different users. Pandora created multiple permanent media server copies to house in various locations closer to users to allow it to stream closer to those users. Pandora made a profit from these copies through its streaming service, but it made these unlicensed copies for free – it did not purchase additional copies of pre-1972 recordings for its various server copies or media servers, thus depriving Flo & Eddie and other owners of pre-1972 recordings of the revenue associated with these record sales.

## CLASS ACTION ALLEGATIONS

    26.    Flo & Eddie brings this action on behalf of itself individually and on behalf of all other similarly situated owners of Pre-1972 recordings, which recordings were copied by Pandora for commercial advantage in California without license or authority.  The proposed class is comprised of and defined as follows:

> All owners of sound recordings of musical performances that initially were "fixed" (*i.e.,* recorded) prior to February 15, 1972, which sound recordings were copied by Pandora in California between the period October 2, 2011 through October 10, 2018, without a license or authorization, for the commercial purpose of making them available through Pandora's streaming media

servers to Pandora's users and subscribers in California and the United States.

27. This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed class are clearly and easily ascertainable and identifiable.

28. The class for whose benefit this action is brought is so numerous that joinder of all class members is impracticable. Flo & Eddie is informed and believes that there are hundreds or thousands of class members and that those class members can be readily ascertained from the Pandora's database files and records. The class members can be readily located and notified of this action.

29. The claims of Flo & Eddie are typical of the claims of the members of the class, and Flo & Eddie's interests are consistent with and not antagonistic to those of the other class members it seeks to represent. Flo & Eddie and all members of the class have sustained actual pecuniary loss arising out of Pandora's course of conduct as complained of herein.

30. Flo & Eddie has no interests that are adverse to, or which conflict with, the interests of the absent members of the class and is able to fairly and adequately represent and protect the interests of such a class. Flo & Eddie has raised viable statutory and common law claims of the type reasonably expected to be raised by members of the class and will vigorously pursue those claims. If necessary, Flo & Eddie may seek leave of the Court to amend this Complaint to include additional class representatives to represent the class or additional claims as may be appropriate. Flo & Eddie is represented by experienced, qualified, and competent counsel who are committed to prosecuting this action.

31. Common questions of fact and law exist as to all members of the class that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from class member to

class member, and which may be determined without reference to the individual circumstances of any class member include, without limitation, the following:

  (A) Whether Pandora copied pre-1972 sound recordings in California during the damages period, without a license or authorization, for commercial purpose;

  (B) Whether Pandora's copying of pre-1972 sound recordings in California during the damages period, without a license or authorization, for commercial, violated California Civil Code § 980(a)(2);

  (C) Whether Pandora's copying of pre-1972 sound recordings in California during the damages period, without a license or authorization, for the commercial purpose of making them available through Pandora's streaming media servers to Pandora's users and subscribers in California and the United States, constitutes common law unfair competition based on misappropriation;

  (D) Whether Pandora's copying of pre-1972 sound recordings in California during the damages period, without a license or authorization, for the commercial purpose of making them available through Pandora's streaming media servers to Pandora's users and subscribers in California and the United States, constitutes conversion;

  (E) The basis and method for determining and computing damages and/or restitution and disgorgement; and

  (F) Whether, pursuant to California Civil Code § 3294, Pandora is guilty of oppression, fraud, or malice thereby entitling the members of the class to an award of punitive damages.

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual litigation of the claims of all class members is impractical. The claims of the individual members of the Class may range from smaller sums to larger sums. Thus, for those class members with

smaller claims, the expense and burden of individual litigation may not justify pursuing the claims individually. And even if every member of the class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the class. Flo & Eddie anticipates no difficulty in the management of this action as a class action.

**FIRST CLAIM FOR RELIEF**
**(For Violation of California Civil Code § 980(a)(2)**
**As Against All Defendants)**

33. Flo & Eddie hereby incorporates all allegations set forth above and below, as though fully set forth herein.

34. California Civil Code § 980(a)(2) provides that "the author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972, has an exclusive ownership therein until February 15, 2047, as against all persons except one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior sound recording . . . ." Pursuant to § 980(a)(2), Flo & Eddie and the members of the class possess exclusive ownership interests in and to their pre-1972 sound recordings, including the sounds embodied in those recordings.

35. Through its unauthorized copying and distribution of pre-1972 sound recordings (including The Turtles' Recordings) in California, Pandora has infringed the exclusive ownership interests in and to the pre-1972 sound recordings in violation of California Civil Code § 980(a)(2).

36. As a direct and proximate consequence of Pandora's violation of California Civil Code § 980(a)(2), Pandora has received and retained money and value that rightfully belongs to Flo & Eddie and the members of the class.

37. As a direct and proximate consequence of Pandora's violation of California Civil Code § 980(a)(2), Flo & Eddie and the members of the class have been damaged in an amount that is not as yet fully ascertained but which Flo & Eddie is informed and believes exceeds $25 million.

## SECOND CLAIM FOR RELEIF

### (For Misappropriation
### As Against All Defendants)

38. Flo & Eddie hereby incorporates all allegations set forth above and below, as though fully set forth herein.

39. Pursuant to California Civil Code § 980(a)(2) and California common law, Flo & Eddie and the members of the class possess exclusive ownership interests in and to their pre-1972 sound recordings, including the sounds embodied in those recordings.

40. Flo & Eddie and the members of the class have invested substantial time and money in developing their pre-1972 Recordings.

41. Pandora did not invest the time and money required to develop those recordings, nor, for the majority of copies made during the damages period, did it incur the license fees that a licensee is otherwise obligated to pay for the ongoing right to make the unlimited permanent server copies and millions of transmission copies necessary for Pandora's service to operate. Instead, Pandora appropriated the property interests of Flo & Eddie and the members of the class at little or no cost to itself.

42. Pandora has misappropriated, and continues to misappropriate, for its own commercial benefit, the property interests exclusively owned by Flo & Eddie and the members of the class in and to their pre-1972 recordings, by making untold

numbers of unauthorized permanent server copies and transmission copies necessary to operate its Music Service.

43. Flo & Eddie and the members of the class have been injured by Pandora's conduct. During the relevant damages period, Pandora's streaming service, which relies on creating unauthorized permanent server copies and millions of transmission copies as alleged above, has supplanted their sales of physical records and digital downloads, and their ability to earn license fees from granting licenses for the making of unlimited digital server copies and transmission copies to online music services as required by streaming services, including to Pandora.

44. As a direct and proximate consequence of Pandora's misappropriation, Pandora has received and retained money and value that rightfully belongs to Flo & Eddie and the members of the class.

45. As a direct and proximate consequence of Pandora's misappropriation, Flo & Eddie and the members of the class have been damaged in an amount that is not as yet fully ascertained but which Flo & Eddie is informed and believes exceeds $25 million, including, without limitation, damages calculated based on lost license fees, gross proceeds (as permitted in misappropriation claims) earned by Pandora from exploiting the unauthorized copies, and/or, the market cost of a permanent digital download for each unauthorized copy alleged above.

46. Flo & Eddie is informed and believes, and on that basis alleges, that in engaging in the conduct described herein, Pandora acted with oppression, fraud and/or malice.  The conduct of Pandora has been despicable and undertaken in conscious disregard of the rights of Flo & Eddie and the members of the class. Accordingly, Flo & Eddie and each member of the class are entitled to an award of punitive damages against Pandora in an amount sufficient to punish and make an example of it.

### THIRD CLAIM FOR RELIEF
**(For Unfair Business Practices)**
**As Against All Defendants)**

47. Flo & Eddie hereby incorporates all allegations set forth above and below, as though fully set forth herein.

48. Pursuant to California Civil Code § 980(a)(2) and California common law, Flo & Eddie and the members of the class possess exclusive ownership interests in and to the pre-1972 recordings, including the artistic performances embodied in those recordings.

49. Pandora's conduct in reproducing and distributing pre-1972 recordings (including The Turtles' Recordings) constitutes a misappropriation of the property rights of Flo & Eddie and each member of the class in the pre-1972 recordings and a violation of California Civil Code § 980(a)(2).

50. By misappropriating the property rights of Flo & Eddie and each member of the class in the pre-1972 recordings and by violating California Civil Code § 980(a)(2), Pandora has engaged in unfair business practices in violation of California Business & Professions Code § 17200.

51. As a direct and proximate consequence of its violation of California Business & Professions Code § 17200, Pandora has received and retained money and value that rightfully belongs to Flo & Eddie and the members of the class.

52. As a direct and proximate result of Pandora's conduct, Flo & Eddie and each member of the class are entitled to restitution and disgorgement under California Business & Professions Code § 17200 in an amount that is not as yet fully ascertained but which Flo & Eddie is informed and believes exceeds $25 million.

### FOURTH CLAIM FOR RELIEF
**(For Conversion)**
**As Against All Defendants)**

53. Flo & Eddie hereby incorporates all allegations set forth above, as though fully set forth herein.

54. Pursuant to California Civil Code § 980(a)(2) and California common law, Flo & Eddie and the members of the class possess exclusive ownership interests in and to their pre-1972 Recordings, including the artistic performances embodied in those recordings.

55. Under the cases cited in paragraph 2, above, unauthorized copying of pre-1972 sound recordings is a conversion of the recordings. By making the copies of pre-1972 recordings necessary to operate its streaming service without the consent or authority of Flo & Eddie and the members of the class as alleged above, Pandora has converted for its own use Flo & Eddie's and class member's property rights in their pre-1972 recordings.

56. As a direct and proximate consequence of its conversion, Pandora has received and retained money and value that rightfully belongs to Flo & Eddie and the members of the class.

57. As a direct and proximate consequence of Pandora's conversion, Flo & Eddie and the members of the class have been damaged in an amount that is not as yet fully ascertained but which Flo & Eddie is informed and believes exceeds $25 million, including, without limitation, damages calculated based on lost license fees, gross proceeds (as permitted in conversion claims) earned by Pandora from exploiting the unauthorized copies, and/or, the market cost of a permanent digital download for each unauthorized copy alleged above.

58. Flo & Eddie is informed and believes, and on that basis alleges, that in engaging in the conduct described herein, Pandora acted with oppression, fraud and/or malice. The conduct of Pandora has been despicable and undertaken in conscious disregard of the rights of Flo & Eddie and each member of the class. Accordingly, Flo & Eddie and each member of the class are entitled to an award of punitive damages against Pandora in an amount sufficient to punish and make an example of it.

# PRAYER

WHEREFORE, Flo & Eddie, on behalf of itself and all other members of the class, prays for Judgment against Pandora, as follows:

    A.    Determining that this is a proper class action maintainable pursuant to Rule 23 of the Federal Rules Civil Procedure, and certifying Flo & Eddie as class representative, and Flo & Eddie's counsel as class counsel.

    B.    On all claims except for violations of California Business & Professions Code § 17200, compensatory damages in excess of $25 million according to proof;

    C.    On the claim for violation of California Business & Professions Code § 17200, restitution and disgorgement of Pandora's unlawful proceeds and revenues in excess of $25 million.

    D.    On the second, third, and fourth claims, punitive and exemplary damages according to proof at trial.

    E.    For interest as permitted by law;

    G.    For such fees and costs (including reasonable attorneys' fees) as permitted by law; and

    H.    For such other and further relief as the Court deems just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff Flo & Eddie, Inc. demands a trial by jury of the claims alleged in this Complaint.

Dated: September 29, 2022

**SUSMAN GODFREY L.L.P.**
KALPANA SRINIVASAN
STEVEN G. SKLAVER
STEPHEN E. MORRISEY
ROHIT D. NATH

*/s/ Kalpana Srinivasan*
Kalpana Srinivasan
Attorneys for Plaintiff Flo & Eddie, Inc.

17
FIRST AMENDED CLASS ACTION COMPLAINT

DATED: September 29, 2022      **GRADSTEIN & MARZANO, P.C.**
Henry Gradstein
Maryann R. Marzano


*/s/ Henry Gradstein*
Henry Gradstein
Attorneys for Plaintiff
FLO & EDDIE, INC.