Kalpana Srinivasan (SBN 237460)
ksrinivasan@susmangodfrey.com
Steven G. Sklaver (SBN 237612)
ssklaver@susmangodfrey.com
Rohit D. Nath (SBN 316062)
rnath@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Henry Gradstein (SBN 89747)
hgradstein@gradstein.com
Maryann R. Marzano (SBN 96867)
Mmarzano@gradstein.com
**GRADSTEIN & MARZANO, P.C.**
1801 Century Park East, 16th Floor
Los Angeles, CA 90067
Telephone:  (323) 776-3100

Stephen E. Morrissey (SBN 187865)
smorrissey@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

Attorneys for Plaintiff Flo & Eddie, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PANDORA MEDIA, LLC, a Delaware corporation; and DOES 1 through 100,<br><br>Defendant. | Case No. 2:14-cv-07648-PSG (GJSx)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PANDORA MEDIA, LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        April 14, 2023<br>Time:       1:30PM<br>Place:      Courtroom 6A<br>Judge:      Hon. Philip S. Gutierrez |

1

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ...............................................................................................5

I.      FACTUAL BACKGROUND ..................................................................5

II.     PROCEDURAL HISTORY ....................................................................7

LEGAL STANDARD .......................................................................................8

ARGUMENT......................................................................................................8

I.      PANDORA'S COPYING OF PRE-1972 RECORDINGS
        ESTABLISHES A PRIMA FACIE CASE FOR RELIEF............................9

II.     NO INTERVENING PRECEDENT EXTINGUISHES FLO &
        EDDIE'S COPYING CLAIMS. ..................................................................12

III.    FLO & EDDIE'S COPYING CLAIMS STAND ALONE AND ARE
        NOT DEPENDENT ON A PUBLIC PERFORMANCE RIGHT .................14

        A.     Pandora Cannot Establish that Its Unauthorized Copying Is Fair Use
               As A Matter Of Law. ..................................................................15

               1.     Disputed Factual Questions Over The Fair Use Factors
                      Preclude a Finding In Pandora's Favor on Summary
                      Judgment. ......................................................................15

               2.     California Penal Code § 653h Precludes A Fair Use
                      Finding In Pandora's Favor. ...........................................20

               3.     Pandora's Fair Use Arguments Contradict The
                      Longstanding Federal Statutory Scheme...................24

        B.     The *SiriusXM* New York And Florida Decisions Are Not License To
               Bypass The Four-Factor Fair Use Analysis.........................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Records, Inc. v. Heilman,*
  75 Cal. App. 3d 554 (1977) ............................................................................... 9, 10

*A&M Records v. Napster, Inc.,*
  239 F.3d 1004 (9th Cir. 2001) ................................................................... 16, 18, 19

*Albion R. R. Co. v. Heeser,*
  84 Cal. 435 (1890) ................................................................................................ 11

*Arkansas Tchr. Ret. Sys. v. Mozilo,*
  551 F. App'x 327 (9th Cir. 2013) ......................................................................... 14

*Bangkok Broad. & T.V. Co. v. IPTV Corp.,*
  742 F. Supp. 2d 1101 (C.D. Cal. 2010) ................................................................. 8

*Barnes-Wallace v. City of San Diego,*
  704 F.3d 1067 (9th Cir. 2012) .............................................................................. 13

*Bonneville Int'l Corp. v. Peters,*
  347 F.3d 485 (3d Cir. 2003) ................................................................................. 22

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569 (1994) ........................................................................................ 4, 19

*Capitol Records, Inc. v. Erickson,*
  2 Cal. App. 3d 526 (Cal. Ct. App. 1969) ......................................................... 9, 11

*Carducci v. Regan,*
  714 F.2d 171 (D.C. Cir. 1983) (Scalia, J.) ........................................................... 1

*Disney Enterprises, Inc. v. VidAngel,* Inc.
  869 F.3d 848 (9th Cir. 2017) ................................................................................ 16

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC,*
  983 F.3d 443 (9th Cir. 2020) ................................................................... 15, 17, 25

*Flo & Eddie, Inc. v. Pandora Media, Inc.,*
  851 F.3d 950 (9th Cir. 2017) ........................................................................*passim*

*Flo & Eddie, Inc. v. Pandora Media, LLC,*
    No. 20-56134, 2022 WL 1800780 (9th Cir. June 2, 2022) ........................*passim*

*Flo & Eddie Inc. v. Sirius XM Radio Inc.*,
    No. 13-CV-5693-PSG-RZX, 2014 WL 4725382 (C.D. Cal. Sept.
    22, 2014) ................................................................................................... 7

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.* ("*Sirius II (Fla.)*"
    229 So. 3d 305 (Fla. 2017) .................................................... 4, 23, 25

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.* ("*Sirius III (NY)*"),
    849 F.3d 14 (2d Cir. 2017) ................................................................. 4

*Flo & Eddie, Inc. v. Sirius XM Radio* ("*Sirius (9th Cir.)*"
    9 F.4th 1167 (9th Cir. 2021) .......................................................*passim*

*Furie v. Infowars, LLC*,
    401 F.Supp.3d 952 (C.D. Cal. 2019) .................................... 16, 18, 19

*Google LLC v. Oracle Am., Inc.*,
    141 S. Ct. 1183 (2021) .................................................................. 4, 16

*Harper & Row Publishers*,
    471 U.S. ...............................................................15, 19, 20, 26

*Hooks v. Kitsap Tenant Support Servs., Inc.*,
    816 F.3d 550 (9th Cir. 2016) ............................................................ 25

*iHeartMedia, Inc. v. Sheridan*,
    300 Ga. 771 (2017) .................................................................... 23, 24

*In re Pandora Media*,
    6 F. Supp. 3d 317 (S.D.N.Y. 2014) ................................................. 23

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) ............................................................ 17

*Lone Ranger Television, Inc. v. Program Radio Corp.*,
    740 F.2d 718 (9th Cir. 1984) .............................................................. 9

*Pandora II*
    789 F. App'x 569, 570 (9th Cir. 2019) .............................................. 7

*People v. Szarvas*,
    142 Cal. App. 3d 511 (Ct. App. 1983) ........................................ 3, 15

*Perfect 10 v. Amazon.com*, Inc.
   508 F.3d 1146 (9th Cir. 2007) ............................................................... 17

*Red Lion Broad. Co. v. F.C.C.*,
   395 U.S. 367 (1969) ............................................................................... 22

*Sega Enterprises Ltd. v. Accolade, Inc.*,
   977 F.2d 1510 (9th Cir. 1992) ........................................................... 17, 18

*Silva-Pereira v. Lynch*,
   827 F.3d 1176 (9th Cir. 2016) ........................................................... 13, 14

*Sirius II (NY)*
   849 F.3d 14 (2d Cir. 2017) ..................................................................... 25

*Sony Computer Entertainment, Inc. v. Connectix Corp.*,
   203 F.3d 596 (9th Cir. 2000) ................................................................. 17

*Stacy v. Colvin*,
   825 F.3d 563 (9th Cir. 2016) ................................................................. 13

*Trahan v. Clayton Dublier & Rice*,
   741 F. App'x 397 (9th Cir. 2018) .......................................................... 19

*UMG Recordings, Inc. v. MP3.Com, Inc.*,
   92 F. Supp. 2d 349 (S.D.N.Y. 2000) ..................................................... 16

*United States v. Cote*,
   51 F.3d 178 (9th Cir. 1995) ................................................................... 13

*United States v. Thrasher*,
   483 F.3d 977 (9th Cir. 2007) ................................................................. 14

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
   227 F.3d 1110 (9th Cir. 2000) ............................................................... 17

**Statutes**

17 U.S.C. § 112 ........................................................................................ 24

17 U.S.C. § 114(d) ................................................................................... 24

47 U.S.C. § 301 ....................................................................................... 21

Cal. Civil Code § 980(a)(2) .................................................................. 5, 9

2011 Cal. Legis. Serv. Ch. 15 ................................................................... 23

California Penal Code § 653h ......................................................... *passim*

Communications Act of 1934. Pub. L. 73–416, 48 Stat. 1064 (1934) ................... 21

Copyright Act, 17 U.S.C. § 107 .............................................................. 25

Music Modernization Act of 2018 .......................................................... 5

**Rules**

California Rule of Court 8.548 ............................................................. 14

Fed. R. Civ. P. 56(a) ..................................................................... 8

**Other Authorities**

*Webster's New World Dictionary* 90 (1966) ............................................. 21

v

# INTRODUCTION

Pandora operates its streaming service by making and disseminating hundreds of unauthorized digital copies of pre-1972 recordings to server locations across California and the country. In its order denying Pandora second anti-SLAPP motion, the Court held that this evidence—in other words, the evidence of Pandora's unauthorized copying—was independently sufficient to establish a prima facie case for relief under California law. *See* Dkt. 115 ("Furthermore, Pandora does not address Flo & Eddie's allegations of unauthorized copying."). Though it did not reach the merits, the Ninth Circuit affirmed that order, and in doing so "direct[ed]" this Court to consider whether "intervening precedent" affected the "legal validity of Flo & Eddie's claims." *Flo & Eddie, Inc. v. Pandora Media, LLC* ("*Pandora III*"), No. 20-56134, 2022 WL 1800780 at *2 (9th Cir. June 2, 2022). The answer to the Ninth Circuit's directive is **no**: There has been no intervening precedent since the Court's denial of Pandora's second anti-SLAPP motion that impacts Flo & Eddie's entitlement to relief.

The sole intervening authority is the Ninth Circuit's 2021 decision in *Flo & Eddie, Inc. v. Sirius XM Radio* ("*Sirius (9th Cir.)*"), 9 F.4th 1167 (9th Cir. 2021), a decision that left Flo & Eddie's claims of unauthorized copying untouched. *Sirius (9th Cir.)* held that California does not recognize an exclusive public performance right for sound recording owners—that is, the right to play recordings to the public. Flo & Eddie agrees that, as a result of *Sirius (9th Cir.)*, it is not entitled compensation due to Pandora's public performance of its recordings. But Pandora's *copying* of Flo & Eddie's recordings is a different matter altogether. Allegations of unauthorized copying were not at issue—and the Ninth Circuit did not address—any claim that Sirius XM engaged in the conduct that Pandora has done here: making tens of thousands of digital copies of pre-1972 recordings for profit. The Ninth Circuit simply ruled on the specific arguments that were put before it. *See Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.) ("[C]ourts do not sit as self-directed

1    boards of legal inquiry and research, but essentially as arbiters of legal questions
2    presented and argued by the parties before them.").

3        What remains clear after the *Sirius (9th Cir.)* decision is that unauthorized
4    copying of pre-1972 recordings is actionable under California law. As the *Sirius (9th*
5    *Cir.)* decision put it, "when a defendant's reproduction . . . violates recognized
6    property rights, such as first publication or reproduction, then courts recognize a
7    misappropriation or conversion." 9 F.4th at 1176. The evidence that Pandora has
8    made thousands of copies of pre-1972 recordings is sufficient to establish a claim.

9        Pandora disagrees. It makes the remarkable claim that it is free to engage in
10   what effectively is bootlegging laundering:   that Pandora can makes these
11   unauthorized copies because it then, in turn, uses them for the purpose of running its
12   for-profit streaming service, as opposed to directly selling these bootleg copies on
13   the open market. Pandora's public-performance whitewashing defense to unlawful
14   copying is not legally cognizable under California law. Indeed, California Penal Code
15   § 653h has, since 1968, prohibited exactly what Pandora has done here: the act of
16   unauthorized copying "for profit *through public performance*." (emphasis added).
17   Under *Sirius (9th Cir.)*, it may be permissible to play The Turtles's *Happy Together*
18   album to the public, but it is still—and always has been—illegal to make 100 bootleg
19   copies of it in order to play those copies at 100 music venues for profit.

20       Pandora also raises two additional arguments, neither of which have anything
21   to do with "intervening" precedent since the Court's order denying Pandora's second
22   anti-SLAPP motion. First, Pandora argues that the Ninth Circuit's 2017 decision in
23   *Pandora I* certifying questions to the California Supreme Court is dispositive of Flo
24   & Eddie's claims. *Flo & Eddie, Inc. v. Pandora Media, Inc.* ("*Pandora I*"), 851 F.3d
25   950 (9th Cir. 2017). Second, relying principally on out-of-jurisdiction *Sirius*
26   decisions in New York and Florida, Pandora argues that its reproductions are fair use
27   as a matter of law. Neither argument holds water.

28       ***First***, Pandora's reliance on *Pandora I* makes no sense. In *Pandora I*, the Ninth

Circuit certified to the California Supreme Court the question of whether owners of pre-1972 recordings "possess an exclusive right of **public performance**" under California law, nothing more. *Pandora I*, 851 F.3d at 951 (emphasis added). No part of that decision mentions—let alone decides—whether Pandora's unauthorized copying of pre-1972 recordings is actionable under California law. That is neither surprising nor relevant to this case now. The district court order on review in *Pandora I*—this Court's order denying Pandora's first anti-SLAPP motion on the pleadings—exclusively addressed the public performance right and did not address any claims of unauthorized copying. Since the *Pandora I* certification order, the parties proceeded to discovery, Flo & Eddie received for the first time Pandora's confidential information about its copying practices, and Flo & Eddie filed an amended complaint to detail these practices and focus this case exclusively on Pandora's unauthorized copying. Pandora's argument, apparently, is that—*before* this discovery and *before* this amended pleading—the Ninth Circuit in *Pandora I* preemptively dismissed claims of unauthorized copying, but mentioned them nowhere in the certification order. This Court was obviously not persuaded by this argument when it denied Pandora's second anti-SLAPP motion—when it held that allegations of unlawful copying independently stated a claim for relief—nor did the Ninth Circuit in affirming that denial see fit to mention *Pandora I* as one of the authorities this Court should consider on remand. *Pandora III*, 2022 WL 1800780 at *2. Simply put, *Pandora I* has no effect on Flo & Eddie's copying claims.

**Second**, Pandora cannot meet its burden on summary judgment to establish that its reproductions of pre-1972 recordings are fair use beyond a dispute of material fact. Fair use is a mixed question of law and fact and requires analysis of four factors, principal among them "the effect of the use upon the potential market for or value of the copyrighted work." *People v. Szarvas*, 142 Cal. App. 3d 511, 519 (Ct. App. 1983). This factor requires factfinding regarding whether or not Pandora's unauthorized copying inflicts "harm to the actual or potential markets for the copyrighted work."

3

1  *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1200 (2021). But Pandora has **no**

2  evidence about its effect on the market: Pandora's Separate Statement of

3  Uncontroverted Facts does not even mention the effect of its copying on the market

4  for Flo & Eddie's recordings. Dkt. 158. That failure of proof alone warrants denial

5  of summary judgment.  In addition, Flo & Eddie's expert Professor Daniel Spulber,

6  the Elinor Hobbs Distinguished Professor of International Business at

7  Northwestern's Kellogg School of Management, opines that Pandora's unauthorized

8  copying impacted the market for pre-1972 recordings by displacing record sales and

9  cutting off a market for licensing or selling digital recordings from Flo & Eddie to

10 streaming companies like Pandora. Nath Ex. 1 (Spulber Decl. ¶¶ 24-32). At a

11 minimum, a rationale juror weighing Dr. Spulber's testimony against Pandora's

12 failure of proof could conclude that Pandora's copying inflicted significant harm on

13 the market (or potential market) for Flo & Eddie recordings. That triable question

14 also precludes summary judgment.

15     Pandora argues that the *Sirius* decisions in New York and Florida require this

16 Court to dismiss Flo & Eddie's claims of unauthorized copying here. *See* Pandora's

17 Mem. of Law ISO MSJ ("MOL") at 12-14; *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*

18 ("*Sirius III (NY)*"), 849 F.3d 14 (2d Cir. 2017); *Flo & Eddie, Inc. v. Sirius XM Radio*

19 *Inc.* ("*Sirius II (Fla.)*"), 229 So. 3d 305(Fla. 2017).  But those decisions—which are

20 out-of-jurisdiction and address a different record under different states' law—are

21 neither persuasive nor relevant. Those decisions summarily held that Sirius XM's

22 unauthorized copying to operate its over-the-air satellite radio service was fair use

23 under New York and Florida law. Neither decision made reference to the four fair-

24 use factors, even though the Supreme Court has made clear that "**[a]ll** [the factors]

25 are to be explored, and the results weighed together." *Campbell v. Acuff-Rose Music,*

26 *Inc.*, 510 U.S. 569, 578 (1994) (emphasis added). And when those factors are

27 explored, Pandora falls short of its burden on summary judgment. Unlike in the *Sirius*

28 cases, Flo & Eddie here has presented detailed testimony concerning market harm.

Nor can Pandora here credibly claim refuge in statutory exemptions designed for over-the-air radio, as Sirius XM did in the New York and Florida cases. The *Sirius* New York and Florida cases are not controlling and distinguishable.

*   *   *

California has long protected owners of pre-1972 recordings form unauthorized reproduction. *See, e.g.,* Cal. Civil Code § 980(a)(2). The record shows that Pandora made hundreds of unauthorized copies of Flo & Eddie recordings. That alone is sufficient to establish liability. On summary judgment, Pandora bears the burden to establish that it had the right to make these unauthorized copies as a matter of law, beyond any dispute of material fact. It has not and cannot meet that burden.

## BACKGROUND

## I.    FACTUAL BACKGROUND

After *Sirius (9th Cir.)* and the passage of the Music Modernization Act of 2018, this case is about the unauthorized copying of pre-1972 sound recordings between 2011 and 2018. Plaintiff Flo & Eddie Plaintiff Flo & Eddie is a California corporation owned by Mark Volman and Howard Kaylan, two of the founding members of the popular 1960s rock group The Turtles. Nath Ex. 2 (Cohen Decl. ¶¶ 3-4). Flo and Eddie is the exclusive owner of all pre-1972 sound recordings by The Turtles, including hits like Happy Together and Elenore. Nath Ex. 2 (Cohen Decl. ¶¶ 5-7).

Pandora is a music streaming service that operated during the relevant period from 2011 to 2018 and continues to operate today. Flo & Eddie's Statement of Genuine Issues ("F&E SGI") Nos. 1-2. During the relevant period, Pandora operated its streaming service by digitally transmitting pre-1972 recordings—including pre-1972 recordings owned by Flo & Eddie—from its servers to end-users' devices. F&E SGI No. 3. Pandora did so by making (at least) hundreds of copies of each pre-1972 recording it streamed on its service. F&E SGI Nos. 14-17, 32. Pandora made a number of these digital copies in California and largely without a license. Nath Ex. 2

5

1   (Cohen Decl. ¶ 27); *id.* ¶¶ 8-10.

2        By its own admission, Pandora's business model depended on being able to

3   make a massive number of temporary and permanent copies of each pre-1972

4   recording. Pandora began by purchasing an initial copy of a CD or digital copy of a

5   recording, then ingesting the tracks onto its systems. F&E SGI No. 9. The copying

6   didn't stop there. Pandora then created an "archive" copy and "back-up" copy, both

7   of which were kept in perpetuity. F&E SGI No. 10-11. For all tracks played on its

8   streaming service during the relevant period, which included a number of Flo &

9   Eddie recordings, ████████████████████████████████

10  ████████████████████████████████████████

11  ████████████████████████████████████████

12  ████████████████████████████████████████

13  ████████████████████████████████████████

14  ███████████████████████████. F&E SGI No. 18. In addition

15  to these permanent copies distributed to Pandora servers across California, ███████

16  ████████████████████████████████████████

17  ██████████████████████. F&E SGI Nos. 23-26. In total,

18  Pandora made the following unauthorized copies of Flo & Eddie's recordings (1)

19  initial archive and back-up copies, (2) ████████████████████████

20  ██████████████████████, and (3) ██████████████████.

21        Pandora made these digital copies for the purpose of operating its for-profit

22  streaming service. Between 2011 and 2018, Pandora monetized its streaming service

23  through both subscription revenue and advertising revenue from sponsors. F&E SGI

24  No. 3; Nath Ex. 3 (Pandora 2012 10-k) ("[W]e generate revenue primarily from

25  advertising. We also offer a subscription service to listeners"). While Pandora gained

26  from its unauthorized copying, Flo & Eddie—and other owners of pre-1972

27  recordings—lost. According to Prof. Daniel Spulber, Pandora's copying practices

28  harmed the market for pre-1972 recording in two ways. First, Pandora's decision to

make unlicensed copies of pre-1972 recordings, instead of purchasing additional copies of each recording or obtaining a license, undercut additional sales and licensing opportunities for owners of pre-1972 recordings, including Flo & Eddie. F&E SGI ¶ 41; Nath Ex. 3 (Spulber Decl. ¶¶ 24-26). Second, Pandora's streaming service, which relied on creating multiple permanent and temporary copies of each streamed recording, displaced record sales. F&E SGI ¶ 42; Nath Ex. 3 (Spulber Decl. ¶¶ 27-32).

## II.   **PROCEDURAL HISTORY**

This case was filed in October 2014. Dkt. 1. It followed a related case against Sirius XM. *Flo & Eddie Inc. v. Sirius XM Radio Inc.*, No. 13-CV-5693-PSG-RZX, 2014 WL 4725382, at *1 (C.D. Cal. Sept. 22, 2014). Pandora filed its first motion to strike Flo & Eddie's claims under California's anti-SLAPP statute, which the Court denied in 2016. Dkt. 22, 28.

Pandora pursued an interlocutory appeal from the Court's denial of its first anti-SLAPP motion in this action. The Ninth Circuit certified the California state law questions regarding public performance to the California Supreme Court, *Pandora I*, 851 F.3d at 951, but the California Supreme Court later dismissed the certified questions. *Pandora II*, 789 F. App'x 569, 570 (9th Cir. 2019). Shortly afterward, the Ninth Circuit remanded for this Court to consider "[t]he scope of the MMA's preemption clauses and their application here." *Id*. Pandora's MMA preemption defense is not at issue in this Motion.

On remand, Pandora filed a second anti-SLAPP motion. The Court denied Pandora's second anti-SLAPP motion on several independent grounds. Among other things, the Court held that Pandora had failed to address Flo & Eddie's independent allegations of unlicensed copying. Dkt. 115 at 13. Pandora pursued another interlocutory appeal.

Before the Ninth Circuit addressed the *Pandora III* appeal, the Ninth Circuit addressed whether California law recognizes an exclusive right of public

performance in pre-1972 recordings in *Sirius (9th Cir.)*, 9 F.4th at 1176. This Court issued an opinion in *Sirius (9th Cir.)* on August 23, 2021, holding that owners of pre-1972 sound recordings do not have an exclusive right of public performance under California law. The *Sirius (9th Cir.)* decision did not address allegations of unauthorized copying. 9 F.4th at 1176.

After the *Sirius (9th Cir.)* decision, the Ninth Circuit affirmed the Court's denial of Pandora's second anti-SLAPP motion in this case. *See Pandora III*, 2022 WL 1800780 at *2. In *Pandora III*, the Ninth Circuit concluded that Pandora had not met Prong One of the anti-SLAPP analysis and did not reach the merits of Flo & Eddie's claims of unlawful copying. The Ninth Circuit directed this court to "consider expedited motions practice on the legal validity of Flo & Eddie's claims in light of intervening precedent." *Id.*

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one that could affect the outcome of the case under the governing substantive law, and an issue of material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1109 (C.D. Cal. 2010) (cleaned up). "In determining whether a genuine issue of material fact exists, . . . the court must view the evidence in the light most favorable to the non-moving party, drawing all 'justifiable inferences' in its favor." *Id.* (cleaned up).

## ARGUMENT

Pandora's third dispositive motion in this case fares no better than the first two. After the *Sirius (9th Cir.)* decision, this case is about Pandora's unlicensed copying. There is no dispute that California grants owners of pre-1972 recordings, including Flo & Eddie, the exclusive right of reproduction. The only question is whether

8

Pandora can show, beyond a dispute of material fact, that its unauthorized reproductions of pre-1972 recordings were somehow excused as a matter of law. As explained below, the answer to that question is no.

## I.   PANDORA'S COPYING OF PRE-1972 RECORDINGS ESTABLISHES A PRIMA FACIE CASE FOR RELIEF.

More than 50 years of California law establishes that for-profit copying of pre-1972 recordings is actionable. California law grants owners of pre-1972 recordings "exclusive ownership" of their recordings. Cal. Civil Code § 980(a)(2). This is an "an intangible property interest in the performances on tape from the time of their recording," *Lone Ranger Television, Inc. v. Program Radio Corp*., 740 F.2d 718, 720 (9th Cir. 1984). That property interest includes an "independent" right to prevent others from "duplicating [these recordings] without consent" for commercial gain. *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 564 (1977). The mechanism by which a bootlegger profits from pirated recordings is immaterial, and California's anti-piracy statute, Penal Code § 653h, makes that clear. That statute, passed in 1968, prohibits unauthorized copying for profit—regardless of whether the profits come from selling bootleg recordings or from publicly performing those recordings. *See* Cal. Penal Code § 653h (1968) (West) (banning unauthorized copying of recordings "with intent to . . . be used for profit through public performance"). California courts have relied on § 653h repeatedly to explain that the right to make copies is one held by the owner of a sound recording under the common law. *Capitol Records, Inc. v. Erickson*, 2 Cal. App. 3d 526, 537 (Cal. Ct. App. 1969) (quoting Penal Code § 653h in describing common law property interest pre-1972 sound recordings); *Heilman*, 75 Cal. App. 3d at 570 (citing Penal Code § 653h in holding that "recorded performances are . . . intangible personal property"). Unauthorized copying of pre-1972 sound recordings has long been actionable under the doctrines of conversion, misappropriation, and Civil Code § 980(a)(2). *Erickson*, 2 Cal. App. 3d at 537; *Heilman*, 75 Cal. App. 3d at 564; *Long Ranger*, 740 F.2d at 725.

9

Under this established body of statutory and common law, the record evidence of Pandora's copying easily defeats summary judgment. Pandora's admits that, during the damages period between 2011 and 2018, it made hundreds of copies of Flo & Eddie recordings. These include permanent "back up" and "archive" copies that Pandora made when it first ingested a recording into its systems, the litany of regional server copies Pandora maintained at its major server sites and regional server locations, and the temporary streaming copies created at users' computers. F&E SGI Nos. 11-12, 14-15. Pandora did all of this for profit—from subscription fees or advertising revenue off of its service—yet acknowledges that it did not pay or obtain a license for its reproductions of pre-1972 recordings. Homer Ex. 1 (Norton Decl. ¶ 9); Nath Ex. 2 (Cohen Decl. ¶ 27). This is more than sufficient to establish a prima facie case that Pandora was "duplicating [these recordings] without consent" for commercial gain. *A&M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 564 (1977).

Pandora, in essence, acted as a high-tech bootlegger—and at least a reasonable juror could conclude as much. Pandora purchased pre-1972 recordings, copied them in California without a license, then profited by using those digital copies as part of its streaming service—making money through advertisements or subscription fees. The conduct alleged is indistinguishable from a bootlegger who bought the *Happy Together* album, made 1,000 bootleg physical copies in California, and then profited from playing those copies at music festivals across the country. The bootlegger profited directly from its unauthorized copying by expanding the geographic scale of its operations. Instead of just playing the single lawfully-purchased recording in a single venue, the bootlegger profited from playing 1,000 copies of the recording simultaneously at 1,000 venues. So too here. Pandora creation and dissemination of unauthorized digital copies of its music library to its various regional servers is what enabled it to stream that music simultaneously to user devices across California and the country. F&E SGI Nos. 18, 26, 40. Because California law's express prohibition on unauthorized, for-profit copying applies equally to the low-tech bootlegging of

10

yesteryear and Pandora's high-tech digital equivalent, a reasonable juror could easily find Pandora liable based on its admitted unauthorized copying of pre-1972 recordings.

Pandora places great emphasis on *how* it uses and profits from the bootleg copies of Flo & Eddie's records—to facilitate public performance. But so what? Whatever a bootlegger does with its improperly obtained copies is irrelevant. Pandora cites no legal doctrine or authority—other than fair use, addressed *infra* 14-25—for its assertion that for-profit copying to facilitate public performance is somehow exempt from liability under California law. The right of reproduction broadly proscribes the "appropriat[ion] [of] artistic performances" to "profit thereby to the disadvantage of" the rightsholder. *Erickson*, 2 Cal. App. 3d at 537. There is no rigid limitation that those profits must always come from the sale of a recording as opposed to some other means of exploitation enabled by technological advances, like using the copies in a digital streaming service. *Albion R. R. Co. v. Heeser*, 84 Cal. 435, 437 (1890) ("The great merit of the common law, so often commended by the jurists, is its plasticity as a system of principles (and not merely of rigid rules) which can be adapted to new conditions in the affairs of men"). Nor is there any special immunity for copies "appurtenant" to public performance (MOL at 23), as California law expressly prohibits unauthorized copying "for profit through public performance." *Erickson*, 2 Cal. App. 3d at 537 (quoting Cal. Penal Code § 653h (1968)); Cal. Penal Code § 653 (prohibiting copying "for commercial advantage or private financial gain through public performance").[1] The record evidence of Pandora's for-profit, unlicensed digital copying is more than sufficient to preclude summary judgment.

---

[1] Pandora's incorrect claim that it qualifies for Penal Code 653h's exemptions for "radio broadcasting" is addressed *infra* at 20-23.

11

## II.   NO INTERVENING PRECEDENT EXTINGUISHES FLO & EDDIE'S COPYING CLAIMS.

The Ninth Circuit's mandate was for this Court to "consider expedited motions practice on the legal validity of Flo & Eddie's claims in light of intervening precedent." *Pandora III*, 2022 WL 1800780 at *2. The only "intervening precedent" since the Court's denial of Pandora's second anti-SLAPP was the Ninth Circuit's *Sirius (9th Cir.)* decision. Pandora, however, barely addresses *Sirius (9th Cir.)*, likely (and correctly) recognizing that the decision does not address the sole remaining claims at issue here—that is, claims of unauthorized copying. Instead, Pandora focuses its fire on *Pandora I*, arguing that the Ninth Circuit's order certifying questions about public performance to the California Supreme Court extinguished any claims of unauthorized copying. This argument is easily rejected.

*Pandora I* did not decide anything related to claims of unauthorized copying. In *Pandora I*, the Ninth Circuit certified to the California Supreme Court the question of whether owners of pre-1972 recordings "possess an exclusive right of public performance" under California law. *Pandora I*, 851 F.3d at 951. From the beginning to the end of the Court's order, it is clear that the order is exclusively about questions of public performance—not unauthorized copying. The certified questions at the outset mentioned the "right of public performance," but did not mention any claims of unauthorized copying. In the "Statement of Facts," the court describes the lawsuit as seeking "damages against Pandora for publicly performing The Turtles pre-1972 recordings on its services without paying royalties"—without any mention of allegations of unauthorized copying. *Id.* at 952. And the discussion of legal issues addresses, exclusively, whether California law protects pre-1972 recording owners "public performance" rights. *Id.* at 955-57. The exclusive focus on public performance is hardly surprising, considering that the order under review also exclusively addressed public performance rights under California law. Dkt. 28. Nothing in *Pandora I* decides the question that the Ninth Circuit in *Pandora III*

expressly left for *this* Court to decide: whether Pandora's unauthorized copying of pre-1972 recordings violated California law.

Pandora seizes on the statement in *Pandora I* that "[r]esolving these questions will dispose of this appeal and determine the merits of Flo & Eddie's underlying claims." 851 F.3d at 957. According to Pandora, this means that *Pandora I* impliedly held, as a matter of law, that the resolving the public performance issue is also dispositive of any claims of unauthorized reproduction—however framed and whatever facts underlying them. But that is a misapprehension of the law-of-the-case doctrine. The law-of-the-case doctrine "clearly does not extend to issues an appellate court did not address." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) (cited in MOL at 10), *as amended on denial of reh'g* (June 2, 1995). Here, Flo & Eddie's claims of unauthorized reproduction were never addressed by the Ninth Circuit in *Pandora I*. Indeed, they could not have been. Flo & Eddie's current claims of unauthorized copying—as alleged in the First Amended Complaint—is based on fact and expert discovery conducted in 2020, three years after the *Pandora I* decision. Even if Pandora were correct that the *Pandora I* court intended to *sub silentio* address copying claims that it never mentioned (it did not), the court could not have addressed the current record, which includes evidence concerning the number and types of unauthorized reproductions and the harm that Pandora's copying inflicted on the market for pre-1972 recordings. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (cited in MOL at 10) ("Given the new evidence on remand, the district court did not abuse its discretion in declining to apply the law of the case doctrine.").

None of Pandora's cited cases support its argument here. *Silva-Pereira v. Lynch*, 827 F.3d 1176, 1191 (9th Cir. 2016), in fact, confirms that the law-of-the-case doctrine bars consideration of an issue only if "the issue in question" was "decided *explicitly* or *by necessary implication*."[2] *Id.* (emphasis added). Pandora admits, as it

---

[2] Pandora's other cited cases highlight the absurdity of Pandora's position on *Pandora I*. In *Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1076 (9th Cir. 2012), the Ninth Circuit applied law of the case on a standing issue that was *expressly*

must, that *Pandora I* did not explicitly address Flo & Eddie's copying claims. Nor did the court address the copying claims by "necessary implication," which generally requires "an implication so strong in its probability that anything to the contrary would be unreasonable." *Silva-Pereira*, 827 F.3d at 1191 (citing and quoting Black's Law Dictionary (9th ed. 2020). That is far from the case here. At most, the *Pandora I* decision did not address the merits of any claims of unauthorized copying, but simply read Flo & Eddie's *original* complaint to include only claims related to public performance.[3] That makes sense given that the decision describes the complaint, at that time, as seeking "damages against Pandora for publicly performing" pre-1972 recordings, with no mention of copying claims, and it is also consistent with the court's statements that the public performance issue was "dispositive" of Flo & Eddie's underlying claims. But that original complaint has now been superseded by the FAC (Dkt. 141), and there is no question that the FAC raises claims of unauthorized copying. Pandora's attempt to read in an unwritten decision on Flo & Eddie's copying claims into *Pandora I* fails.

## III. FLO & EDDIE'S COPYING CLAIMS STAND ALONE AND ARE NOT DEPENDENT ON A PUBLIC PERFORMANCE RIGHT

Pandora argues that Flo & Eddie's claims "cannot survive absent the public performance right." Motion at 12. This assertion is, of course, heavily disputed. Flo & Eddie's copying claim stands alone and by itself. The copying claim does not, as Pandora spins it, somehow turn on what a bootlegger does downstream with its ill-gotten bounty.

---

*decided* in a prior published opinion in the same case. In the unpublished decision in *Arkansas Tchr. Ret. Sys. v. Mozilo*, 551 F. App'x 327, 329 (9th Cir. 2013), the Ninth Circuit declined to revisit an issue of choice-of-law to which the parties had previously stipulated. *United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007), did not involve certification order at all.

[3] Pandora's reference to California Rule of Court 8.548 is also unavailing. That rule permits certification where an issue "*could* determine the outcome of a matter pending in the requesting court." (emphasis added). The California Supreme Court's determination of the public performance issue in Flo & Eddie's favor, of course, would have (and could have) determined the outcome of the appeal.

14

Each of the authorities Pandora relies on—including the *Sirius XM* New York and Florida decisions that Pandora repeats throughout its brief—were all decided as a matter of fair use. But Pandora cannot meet its burden to establish fair use as a matter of law under controlling California and Ninth Circuit authority for several reasons, each of which is detailed below.

### A.  Pandora Cannot Establish that Its Unauthorized Copying Is Fair Use As A Matter Of Law.

#### 1.  Disputed Factual Questions Over The Fair Use Factors Preclude a Finding In Pandora's Favor on Summary Judgment.

Because fair use is an affirmative defense, Pandora bears the burden to show that its copying done for profit constitutes fair use as a matter of law. *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 451 (9th Cir. 2020). This it cannot do. The factual record establishes that, when viewed in the light most favorable to Flo & Eddie, as must be done on summary judgment, each fair use factor weighs against a fair use finding and, at a minimum, cannot be resolved in Pandora's favor on summary judgment.

A fair use analysis requires consideration of four factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *People v. Szarvas*, 142 Cal. App. 3d 511, 519 (Ct. App. 1983) (holding fair use defense did not apply to reproduction and reselling of sound recordings in violation of Penal Code § 653h). In evaluating whether particular conduct qualifies as fair use, "[a]ll four factors are to be explored and the results weighted together, in light of the purposes of copyright." *Dr. Seuss Enterprises, L.P.*, 983 F.3d at 451. Fair use is a "mixed question of law and fact." *Harper & Row Publishers*, 471 U.S. at 560. Summary judgment on fair use is inappropriate where

15

material facts are in dispute. *Furie v. Infowars, LLC*, 401 F.Supp.3d 952, 976 (C.D. Cal. 2019) ("Weighing the four factors together, the Court cannot conclude as a matter of law, especially in light of numerous conflicting factual disputes, that Defendants are entitled to summary judgment on their defense of fair use."). Pandora falls far short of its burden as the moving party here.

**Factor 1: Purpose and Character of the Use.** This factor "asks whether and to what extent the new work is transformative." *A&M Records v. Napster, Inc*., 239 F.3d 1004, 1015 (9th Cir. 2001). The central question is "whether the new use essentially repeats the old or whether, instead, it 'transforms' it by infusing it with new meaning, new understandings, or the like." *UMG Recordings, Inc. v. MP3.Com, Inc*., 92 F. Supp. 2d 349, 351 (S.D.N.Y. 2000). Because Pandora's use "is commercial," it is "presumptively [] unfair," *Disney Enterprises, Inc. v. VidAngel*, Inc., 869 F.3d 848, 861 (9th Cir. 2017) (alterations omitted), though a showing of commercial use alone "is not dispositive of the first factor," *Google LLC v. Oracle Am., Inc*., 141 S. Ct. 1183, 1204 (2021); *see also A&M Records*, 239 F.3d at 1015 ("commercial use is demonstrated by a showing that repeated and exploitative unauthorized copies of copyrighted works were made to save the expense of purchasing authorized copies").

Under this standard, Pandora cannot establish (at all, and certainly not as a matter of law) that its unauthorized, for-profit copying is transformative. Pandora does not add any commentary, artistic expression, or other transformation to pre-1972 recordings. Pandora merely reproduces these recordings in digital formats onto its servers, avoiding the cost of purchasing additional digital copies, a use that courts have repeatedly held is non-transformative. *A&M Records*, 239 F.3d at 1015 ("Courts have been reluctant to find fair use when an original work is merely retransmitted in a different medium"); *UMG Recordings, Inc. v. MP3.com*, 92 F. Supp. 2d 349, 351 (S.D.N.Y. 2000) (holding creating intermediate MP3 server reproductions was not fair use). In addition, "where [a party's] use is for the same intrinsic purpose as the

copyright holder's, such use seriously weakens a claimed fair use." *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117 (9th Cir. 2000). Here, Pandora's rote reproductions are used for the same purpose as Flo & Eddie's—Pandora makes copies to distribute those copies to end users for musical entertainment. *Cf. Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003) (cited in OB 34 n.7) ("[R]eproducing music CDs in computer MP3 format does not change the fact that both formats are used for entertainment purposes."); *see e.g.,* F&E SGI No. 40 (confirming that Pandora copied pre-1972 recordings for the purpose of delivering its music service); MOL at 9. Because Pandora's copies transform neither the work itself nor the purpose for its it is used, Pandora's conduct cannot be deemed transformative as a matter of law.

None of the cases on which Pandora support its position. *Perfect 10 v. Amazon.com*, Inc., 508 F.3d 1146, 1164 (9th Cir. 2007), involved the noncommercial caching of recently visited websites by end users' computers for the purpose of minimizing bandwidth usage.  That case is distinguishable, because it did not involve commercial, for-profit copying. Pandora also cites *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1522-23 (9th Cir. 1992), and *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000), both cases involving the reproduction of computer code for the purpose of making creative works, *i.e.*, making software compatible with video game consoles. Pandora, of course, cannot prove as a matter of law that it copies pre-1972 recordings to create new, creative works. None of Pandora's cited cases undercut the common-sense proposition that creating exact digital replicas of a sound recording for profit is not a transformative use and therefore not fair use.

Pandora's failure to prove a transformative use is alone dispositive of its fair use defense on summary judgment because it undercuts the other factors of the analysis. *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d at 459 ("non-transformative and commercial use" is presumed "leads to cognizable market harm

of the original" (quotation marks omitted)). At a minimum, the factual inferences as to whether the mechanical, for-profit copying of Flo & Eddie's recordings somehow transformed those recordings must be resolved against Pandora, and for that reason alone summary judgment must be denied. *Furie*, 401 F.Supp.3d at 974 (denying summary judgment on fair use defense where "disputed issues of fact" remained as to Factor 1).

*Factor 2: Nature of Copyrighted Work.* Because "[w]orks that are creative in nature are 'closer to the core of intended copyright protection' than are more fact-based works," this factor "cuts against a finding of fair use." *A&M Recs.*, 239 F.3d at 1017. Similarly, the fact that Pandora copies pre-1972 recordings wholesale—not some portion of the work—also weighs against a finding of fair use. *A&M Recs.*, 239 F.3d at 1016 ("copying an entire work 'militates against a finding of fair use" (quotation marks omitted)).

Pandora misrepresents *Sega* in arguing that this factor weighs in favor of a fair use. MOL at 23. In *Sega*, the court held that the copy of a computer code was fair use under the longstanding doctrine that certain types of works—namely, works like computer code that are "functional"—"may be copied," even if such copying includes reproductions of the "expressive elements" of the work. *Sega*, 977 F.2d at 1524. That finding has no relevance here, as Pandora identifies no "functional" element of the fixation of sounds that Flo & Eddie owns under California law. The Flo & Eddie sound recordings at issue, by contrast, are by nature the type of creative musical work that forms the core of copyright protection and for which the second factor weighs against a fair use finding. *A&M Recs.*, 239 F.3d at 1017.

*Factor 3: Amount and Substantiality Used.* The Ninth Circuit has held that "copying an entire work militates against a finding of fair use." *A&M Recs.*, 239 F.3d at 1016 (cleaned up). Pandora copies Flo & Eddie sound recordings in their entirety, and thus this factor serves as another reason why Pandora cannot establish its fair use defense as a matter of law. Pandora's sole argument to the contrary depends on its

erroneous assertion that its rote reproduction of pre-1972 recordings is transformative, addressed *supra* 15-17.

**Factor 4: Effect on the Market**. The effect-on-the-market factor is fatal to Pandora's Motion. "Fair use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied." *Id*. The effect on the market is "the single most important element of fair use." *Harper & Row Publishers*, 471 U.S. at 566. "[T]o negate fair use one need only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work." *Id*. at 568. On the other hand, a proponent of fair use "would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets." *Campbell*, 510 U.S. at 590. Summary judgment on a fair use defense is inappropriate where there is conflicting evidence regarding the market harm. *See, e.g., Furie*, 401 F. Supp. 3d at 975.

Pandora offers not a shred of evidence on this factor. It may try to do so on reply for the first time, but that would be new and the argument is waived. *Trahan v. Clayton Dublier & Rice*, 741 F. App'x 397, 399 (9th Cir. 2018) ("[A]s this argument was first raised in her Reply Brief, it is waived."). This failure of proof, by itself, defeats Pandora's attempt to prove fair use as a matter of law. Flo & Eddie's expert Prof. Daniel Spulber opines that Pandora's copying caused market harm in two distinct ways. First, Pandora's unauthorized copies deprived Flo & Eddie of the right to operate in the market of selling additional copies for Pandora—or other similarly situated streaming companies—to maintain on its servers and stream to listeners. F&E SGI No. 40-41; Nath Ex. 1 (Spulber Decl. ¶¶ 24-26). Second, Pandora's for-profit copying—without which Pandora claims its streaming would be impossible—has negatively impacted the sale of both CD and digital copies of Flo & Eddie sound recordings. F&E SGI No. 42; Nath Ex. 1 (Spulber Decl. ¶¶ 27-32). As Prof. Spulber opines based on historical market data, Pandora's noninteractive service—enabled by its reproduction and dissemination of pre-1972 recordings across the country—

displaced record sales, in part because Pandora's streaming service allowed users to target narrower, more customizable streams of recordings than one could access via traditional (or even satellite) radio. F&E SGI No. 36-38, 42.

Pandora, for its part, makes zero effort to meet its burden as the moving party on this factor. Citing *Sirius II (NY)*, Pandora argues that "there is significant *reason to believe*" that its streaming service is beneficial to Flo & Eddie (and other sound recording owners) because its service may "generate[] interest" in artists' works. MOL at 24 (emphasis added). But a "reason to believe" a fact is not evidence of it. Indeed, Pandora's Separate Statement of Uncontroverted Facts includes nothing about the market harm factor. Dkt. 158. Pandora's failure to provide any evidence concerning the "single most important element of fair use" is dispositive, and even more so in light of the evidence that Pandora's copying caused market harm to Flo & Eddie and other owners of pre-1972 recordings. *Harper & Row*, 471 U.S. at 566.

> 2. California Penal Code § 653h Precludes A Fair Use Finding In Pandora's Favor.

Pandora cannot establish that its copying was fair use under California law for another reason: The California legislature has expressly criminalized the copying of pre-1972 recordings to facilitate for-profit public performance. Cal. Penal Code § 653h (prohibiting copying "for commercial advantage or private financial gain through public performance"). In other words, the California legislature has flatly rejected the entire premise of Pandora's Motion—that is, that if public performance is legal, then copying to facilitate that public performance must also be legal. The Penal Code § 653h was enacted in 1968, at a time when—under the Ninth Circuit's recent decision in *Sirius (9th Cir.)*—owners of pre-1972 recordings had no right of public performance under California law. Nevertheless, California made no mistake: While a business could lawfully perform a pre-1972 recording, it could not make copies of those same recordings to facilitate its for-profit performances. Such conduct in California is criminal, and therefore not fair use.

In an effort to evade Penal Code § 653h, Pandora seeks refuge in an exception designed to protect traditional radio and television broadcasters. MOL at 19-21. That exception, originally codified in former § 653h(d), excepts from liability "any person engaged in *radio* or television *broadcasting*" who reproduces a sound recording "intended for, or in connection with, *broadcast transmission* or related uses." Cal. Penal Code § 653h(d) (1968) (emphasis added). But Pandora does not qualify as a "radio broadcaster"—either today or when Penal Code § 653h was enacted in 1968. As a matter of common sense, broadcasting involved the widespread delivery of a the same stream of programming over the airwaves to the broader public. Unlike radio or television, Pandora does not "broadcast" anything to the public. It delivers private, bespoke collections of music to users on their individual devices.[4]

When the California legislature wrote the term "radio broadcasting" in Penal Code § 653h in 1968, that term had a specific meaning: the transmission of sound using over-the-air radio waves. *See, e.g., Webster's New World Dictionary* 90 (1966) (defining "broadcast": "to send *over the air* by means of radio." (emphasis added)). Since 1934, "radio" broadcasting was synonymous with a highly regulated industry subject to the FCC licensing regime established by the Communications Act of 1934. Pub. L. 73–416, 48 Stat. 1064 (1934); 47 U.S.C. § 301 (generally prohibiting "transmission of energy or communications or signals by radio" except by license). This licensing regime for "radio" specifically governed the use of frequencies over the airwaves, and thus applied to forms of over-the-air radio (*e.g.*, AM/FM radio). *See, e.g., Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 376–77 (1969) ("[B]roadcast frequencies constituted a scarce resource whose use could be regulated and rationalized only by the Government.  . . .[T]he Federal Radio Commission was

---

[4] Pandora's 10-k from 2012 confirmed precisely how narrowly tailored—and different from radio broadcasting—Pandora's streaming service experience was: "Unlike traditional radio, we enable each of our listeners to create up to 100 personalized stations. . . . When a listener enters a single song, artiest or genre to start a station . . . the Pandora service instantly generates a station that plays music we think that listener will enjoy." Nath Ex. 3 (Pandora's 10-k at 3).

established to allocate frequencies . . ." (emphasis added)). Because internet streaming services (like Pandora's) do not operate by using frequencies over the airwaves, they are not regulated as "radio" broadcasters for the simple reason that they are not radio broadcasters, as that term has been understood for over a century. If Pandora were engaged in "radio broadcasting" within the meaning of § 653h, its streaming service would be regulated as a radiobroadcasting service and be subject to FCC licensing. But it isn't.

Furthermore, federal copyright law has, for decades, treated radio broadcasting and internet streaming as two entirely separate things. Since 1996, federal copyright law included special exemptions for "broadcast transmissions," *i.e.*, FCC-licensed radio, but those exemptions are unavailable for internet streaming services like Pandora. *Bonneville Int'l Corp. v. Peters*, 347 F.3d 485, 495 (3d Cir. 2003) (holding that "webcasting does not meet the definition of a 'nonsubscription broadcast transmission'" and therefore is not eligible for radio broadcasting exemptions under § 114(d)(1)(A)). This is for good reason: Traditional radio was geographically limited and had a historically symbiotic relationship with the recording industry, while digital streaming risked "mak[ing] sound recordings vulnerable to exposure to a vast audience through the initial sale of only a potential handful of records." *Bonneville Intern. Corp.*, 347 F.3d at 497 (quoting 141 Cong. Rec. 1292 (1995)). The internet did not exist in 1968, but the California legislature at that time would have understood streaming to be distinct from radio broadcasting for the same reasons Congress did years later—streaming is not just different physically (over-the-internet vs. over-the-air), but different in its capacity to compete with and displace record sales. Indeed, Pandora has publicly emphasized its competitive advantages, as an internet streamer, over broadcast radio. Nath Ex. 3 at 3. And even though the California legislature has amended Penal Code § 653h multiple times since the rise of internet streaming—including as recently as 2011[5]—it has never expanded the

---

[5] *See* 2011 Cal. Legis. Serv. Ch. 15 (A.B. 109) (WEST).

radio-broadcasting exemption to include services like Pandora's. Pandora's argument that it is eligible for the radio-broadcasting exemption under § 653h is therefore meritless.

Pandora's cited authorities only highlight the weakness in its position. The legislative history Pandora relies on merely confirms that the legislature intended to exclude the "radio . . . industry" from liability under Penal Code § 653h. Pandora was not part of the radio industry in 1968, nor, as explained above, is Pandora treated as radio broadcaster under federal law today. Pandora also cites *Sirius II (Fla.)*, 229 So. at 320, which addresses a similar radio-broadcaster exemption under Florida law. But the defendant in that case was Sirius XM, which, unlike Pandora, is and was an over-the-air broadcaster subject to the FCC licensing regime. Nor is Pandora's attempt to make hay of Flo & Eddie's references "internet radio" of any relevance. Penal Code § 653h's exemption applies only "radio ***broadcasting***" that involves "***broadcast*** transmissions."[6] As Pandora admitted in its own 10-k, "[b]roadcast radio" is distinct from "internet radio." Nath Ex. 3 at 7 ("We compete for listeners with ***broadcast radio*** providers . . . . Broadcast radio pays no royalties for its use of sound recordings," while "***internet radio*** providers" do. (emphasis added)).

Lastly, Pandora relies the two-page decision in *iHeartMedia, Inc. v. Sheridan*, 300 Ga. 771, 772 (2017). In that case, the Georgia Supreme Court concluded that iHeartMedia's streaming service qualified as related to a "radio broadcast transmission" largely because the "user experience" for iHeartMedia listeners was virtually identical to the "user experience" for broadcast radio. *Id.* 773. But that was because iHeartMedia delivered "the exact programming offered by its terrestrial radio stations over the Internet"—*i.e.*, a carbon copy of an AM/FM radio broadcast. *Id.* Pandora does not do that. Indeed, Pandora has repeatedly advertised how the user experience for ***its*** service is dramatically different than for traditional radio. *Infra* 20

---

[6] *In re Pandora Media*, 6 F. Supp. 3d 317, 328 (S.D.N.Y. 2014), similarly, at most, concludes that Pandora is a noninteractive service for the purposes of determining federal royalty payments.

23

n.4; F&E SGI Nos. 36-37, 42. In any event, *Sheridan* is neither controlling nor persuasive. The court interpreted the phrase "broadcast transmission" using factors like "user experience," without any attempt to discern the plain meaning of the term in its historical and industry context. *Sirius XM (9th Cir.)*, 9 F.4th at 1173 ("[S]ome phrases have a separate or more specialized 'term of art' meaning that cannot be stripped away from its historical context or subject matter area").

The absence of any applicable exemption from Penal Code § 653h is fatal to Pandora's Motion. Because California Penal Code § 653h establishes that the precise conduct at issue—the copying of recordings "for profit through public performance"—violates California law, Pandora's fair use defense fails.

3. Pandora's Fair Use Arguments Contradict The Longstanding Federal Statutory Scheme.

Aside from the *Sirius* cases, all of the fair-use cases on which Pandora relies interpret the federal statutory scheme. But even in the federal context 17 U.S.C. § 112 establishes that the legal right to publicly perform a sound recording is separate from the right to make reproductions of the recordings for the purpose of public performance. Congress created two separate licenses: one for transmissions (*i.e.*, performances), under 17 U.S.C. § 114(d), and one for reproductions created to facilitate those performances, under § 112(e)(1), which sets strict limits on the number and types of copies one can make. The limits on permissible reproductions under § 112(e) are dead letter if Pandora's argument is correct that 17 U.S.C. § 107, governing fair use, already conclusively established the legality of all reproductions made to facilitate public performance. Because both California and federal statute specifically proscribe the conduct at issue here, Pandora's fair-use argument fails.

**B.    The *SiriusXM* New York And Florida Decisions Are Not License To Bypass The Four-Factor Fair Use Analysis.**

Pandora also invokes two out-of-circuit decisions from other Flo & Eddie lawsuits against Sirius XM cases interpretating New York and Florida law. MOL at

24

12-16, 17-18. These cases are equally irrelevant. The Second Circuit's decisions in *Sirius I (NY).*, 821 F.3d 265, 271 (2d Cir.), and *Sirius II (NY)*, 849 F.3d 14 (2d Cir. 2017), summarily decided that Sirius XM's internal copies created in the course of delivering its satellite radio service were fair use under New York law, without applying or considering any of the relevant fair use factors. *Sirius I (NY)*, 821 F.3d at 270 n.4. That decision is distinguishable because New York law, unlike California's, did not explicitly protect sound recording owners' exclusive right of reproduction "for profit through public performance." Cal. Penal Code § 653h. These distinctions aside, the court's fair use conclusion is also wrong, and its failure to address the four-factor analysis cannot be squared with the law of this circuit. *Dr. Seuss Enterprises, L.P.*, 983 F.3d at 451 ("[a]ll four factors are to be explored and the results weighted together")

The Florida Supreme Court's decision in Sirius II (Fla.) is also distinguishable. That court held that Sirius XM's buffer and back-up copies of pre-1972 recordings created fell within an exception for "radio broadcast transmissions" in Florida's anti-piracy statute. 229 So. 3d at 307. The parties did not dispute that Sirius XM's activity—over-the-air satellite broadcasting—qualified as a "radio broadcast transmissions." As explained above, Pandora does not deliver its service via frequencies over the airwaves, and therefore cannot qualify for the parallel exception in Penal Code § 653h. Supra 20-23.

The *Sirius* New York and Florida cases are distinguishable for another reason. In neither case did the record contain evidence as to Factor 4 of the fair use analysis, *i.e.*, the effect of the use on the market or potential market for the works. That is not the case here, at least for Flo & Eddie. As explained above, Flo & Eddie have shown that Pandora's copying undercuts a market for selling permanent copies to Pandora (and other streaming services) and displaced pre-1972 record sales. This evidence on "the single most important element of fair use" is distinguishes the *Sirius* New York and Florida cases. *Harper & Row*, 471 U.S. at 566.

25

1

2   Dated:  January 13, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUSMAN GODFREY L.L.P.**
KALPANA SRINIVASAN
STEVEN G. SKLAVER
ROHIT D. NATH


*/s/ Rohit D. Nath*
Rohit D. Nath
Attorney for Plaintiff Flo & Eddie, Inc.

26